David A. Shaneyfelt (CA Bar No. 240777)*
DShaneyfelt@alvarezfirm.com
**The Alvarez Firm**
24005 Ventura Blvd.
Calabasas, CA 91302
Telephone: (818) 224-7077
Facsimile: (818) 224-1380

Jonathan A. Scruggs (AZ Bar No. 030505)**
jscruggs@ADFlegal.org
Bryan D. Neihart (AZ Bar No. 035937)**
bneihart@ADFlegal.org
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028

*Counsel for Plaintiffs The Babylon Bee, LLC
and Kelly Chang Rickert*

*\* Local Counsel*
*\*\*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **The Babylon Bee, LLC** and **Kelly Chang Rickert**, | Civil No. 2:24-cv-08377 |
| *Plaintiffs*, | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| **Rob Bonta**, in his official capacity as Attorney General of the State of California, **Shirley N. Weber**, in her official capacity as California | ACTION SEEKING STATEWIDE RELIEF |

Secretary of State, **George Gascón**, in his official capacity as District Attorney for Los Angeles County, and **Hydee Soto**, in her official capacity as the Los Angeles City Attorney,

    *Defendants.*

## INTRODUCTION

1.    The Babylon Bee is a well-known Florida company that publishes online political satire seen by millions of Americans. Kelly Chang Rickert is a California attorney who regularly engages in online political debate on her blog and social media accounts. They each use humor and satire to entertain, communicate truth, and critique the powerful. Their political commentary rests at the core of the First Amendment.[1]

2.    But California recently passed two laws that punish speakers like them for posting certain political commentary online. In July, California Governor Gavin Newsom tweeted that a parody video of Kamala Harris should be "illegal." The legislature heard the call and passed two laws that forbid political expression under the label of "materially deceptive content." One law (AB 2839) bans people from distributing content California deems "materially deceptive" about candidates, elected officials, and elections, allowing various officials and anyone else who sees the content to sue, have posts removed, and get attorneys' fees. The law also forces The Bee and Rickert to include a label on their satire that makes the satire so obvious that it defeats the point of posting it. The second law (AB 2655) converts social media platforms into California state snitches by requiring them to field reports about user posts with "materially deceptive content" and then remove or label them. Newsom eventually signed the bills, proudly tweeting

---

[1] This Court has jurisdiction over Plaintiffs' claims. *See infra* ¶¶ 7–9.

that the laws now outlawed the political parody video that upset him earlier. For Newsom, it was mission accomplished.

3.      But Newsom and the legislature forgot about the First Amendment. Their laws regulating "materially deceptive content" forbid anyone from posting or reposting content that harms a candidate's "reputation" or "electoral prospects," "influences an election in California," undermines "confidence in" an election's "outcome," and more. These subjective terms are codewords that allow government officials and political opponents to sue over content they dislike. These broad and vague laws will chill speech and debate that criticizes politicians and their platforms.

4.      Such censorship threatens the heart of public discourse. When debating controversial political ideas, candidates, and views, it is often hard to separate fact from opinion, truth from lies, exaggerations from malicious deceptions, humor from ill will. That's why the First Amendment gives breathing room for political ideas to air and ventilate—even ideas that are wrong or deceptive. The First Amendment protects this freedom because it trusts the American people to be able to think and decide for themselves in the context of debating political candidates and issues.

5.      California officials don't share that trust. They want to be the arbiters of political truth online. So California passed AB 2839 and AB 2655 to censor speech based on their officials' perception of truth. But on this, government officials don't get the benefit of the doubt. That's First Amendment 101. We don't trust the government to decide what is true in our online political debates.

6.      AB 2839 and AB 2655 violate that foundational First Amendment principle. As such, these laws should be facially enjoined—and at a minimum enjoined as applied to the Babylon Bee and Rickert—so that open political debate is returned to the people of California.

## JURISDICTION AND VENUE

7.      This action arises under the First and Fourteenth Amendments to the United States Constitution. This Court has subject-matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

8.      This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201–02 and Fed. R. Civ. P. 57; injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorney fees under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

9.      Venue lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to this lawsuit occurred in this district and the California government and its agencies are citizens of every district in California.

## PARTIES

*Plaintiffs*

10.      Plaintiff The Babylon Bee, LLC ("The Bee") is a Florida limited liability company with a principal place of business in Florida. The Bee is registered to do business in California as a Limited Liability Company-Out of State, maintains an office in California, employs people who reside in California—including its editor-in-chief who reviews and personally

3

approves almost all of the content The Bee produces—directs advertising into California, has many paying subscribers who reside in California, and films nearly all its satirical sketches, videos, and podcasts in California.

11.    The Bee publishes satirical news articles, photographs, and videos on its website (www.babylonbee.com) which averages more than 20 million viewers per month, including viewers in California.

12.    The Bee also publishes satirical articles, photographs, and videos on social media cites including X (formerly known as Twitter), Facebook, Instagram, and YouTube. The Bee has millions of followers and subscribers across these social media platforms, including followers and subscribers in California.

13.    Plaintiff Kelly Chang Rickert is a United States Citizen and resides in Los Angeles County, California. Rickert regularly posts on topics including politics, elections, and culture on a blog that she alone controls, owns, operates, and curates as well as on her public social media accounts on X and Instagram and her private account on Facebook.

**Defendants**

14.    Defendant Robert Bonta is the Attorney General of the State of California and is authorized to enforce California's laws, including AB 2839 and AB 2655. Cal. Const. art. V, § 13; Cal. Elec. Code § 20516.

15.    Defendant Shirley N. Weber is the California Secretary of State. She has authority to administer, enforce, and implement California's Elections Code, including AB 2839 and AB 2655. Cal. Gov't Code § 12172.5.

16.    Defendant George Gascón is the District Attorney for Los Angeles County with the authority to "initiate … all prosecutions for public offenses," including violations of AB 2839 and 2655. Cal. Gov't Code § 26500; Cal. Elec. Code § 20516.

17.    Defendant Hydee Soto is the Los Angeles City Attorney with the authority to enforce AB 2839 and AB 2655. Cal. Elec. Code § 20516.

18.    Defendant Soto's office has authority to "bring[] civil enforcement actions in the name of the People of the State of California." *See* https://perma.cc/N946-4LHJ.

19.    Under AB 2839, the Attorney General, the District Attorney, and the City Attorney are "elections official[s]" because they have the authority to "perform another duty related to administering the provisions of the Elections Code." Cal. Elec. Code §§ 20012(f)(6)(iv). They have that authority by virtue of AB 2655. *See* Cal. Elec. Code § 20516.

20.    Under AB 2839 and AB 2655, the Secretary of State is an "elections official" with the same enforcement authority as the laws give to "elections official[s]." Cal. Elec. Code §§ 20012(f)(6)(ii), 20512(g)(2).

21.    Defendants Bonta, Weber, Gascón, and Soto "may seek injunctive or other equitable relief prohibiting the distribution of the materially deceptive content," "bring an action for general or special damages," seek attorney's fees and costs as "election official[s]" for violations of AB 2839. Cal. Elec. Code § 20012(d).

22.     Defendants Bonta, Weber, Gascón, and Soto "may seek injunctive or other equitable relief" to compel the removal of "materially deceptive content" for violations of AB 2655. Cal. Elec. Code §§ 20515(b), 20516.

23.     All defendants are named in their official capacities.

## FACTUAL BACKGROUND

### I.    Satire has a rich and important history, including in America.

24.     Satire is a distinct type of literature with a history that stretches back to Ancient Rome. Gilbert Highet, *Anatomy of Satire* 24 (1962).

25.     As a genre, satire focuses on topical content or individuals, speaks to particular moments, and generally "deals with actual cases, mentions real people by name or describes them unmistakably (and often unflatteringly)." *Id.* at 5, 13, 16.

26.     Parody is a form of satire that takes original content, imitates it, and then makes the original look absurd through various devices. *Id.* at 13.

27.     The end of satire is often to criticize or mock an idea, event, or person for the purpose of correction and improvement.

28.     Figures such as Horace, Plato (*Menexenus*), Miguel de Cervantes (*Don Quixote*), Voltaire (*Candide*), Jonathan Swift (*Gulliver's Travels*), and George Orwell (*Animal Farm*) have used satire to provide social commentary in order to expose underlying truths.

29.     Satirists "intend[] to shock" their audience "[b]y compelling them to look at a sight they had missed or shunned" and help their audience to "realize the truth, and then move[] … to feelings of protest." *Id.* at 20.

6

30. In short, satirists "tell the truth with a smile, so that [they] will not repel [people] but cure them of th[eir] ignorance which is their worst fault." *Id.* at 235.

31. In these ways, satire and parody make audiences do a double-take by believing that they are seeing a serious rendering of an original, and then allowing them to laugh at their own gullibility when they realize that they are really viewing satire or parody.

32. Through this technique, satirists intend to prompt thought, internal reflection, and public dialogue about the subject of the satire.

33. To do this effectively, satire and parody leverage the expectations that are created in an audience when they see something in a particular form and juxtapose that realism with the satirical form.

34. Satire and parody generate their most rhetorical power by leveraging the mimicry of a particular form, event, idea, or person against the heightened dissonance created by the form of satire.

35. This power comes from satire's and parody's proximity to the original.

36. As the Supreme Court recognized in another context, "[p]arody needs to mimic an original to make its point." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580–81 (1994).

37. Because of its effectiveness and appeal, satire and parody have been used throughout American history to express matters of current interest—especially matters of politics and politicians.

7

38.    From lampooning George Washington and Thomas Jefferson to Donald Trump and Kamala Harris, satire has been used to "tear[] down facades, deflate[] stuffed shirts, and unmask[] hypocrisy" with such consistency that "[n]othing is more thoroughly democratic than to have the high-and-mighty lampooned and spoofed." *Falwell v. Flynt*, 805 F.2d 484, 487 (4th Cir. 1986) (Wilkinson, J., dissenting from denial of rehearing).

**II.    The Babylon Bee is a satirical news source that posts "Fake news you can trust."**

39.    The Bee fits well within this longstanding tradition of using satire and parody to speak the truth, expose bad ideas, and encourage societal change.

40.    The Bee's tagline is "Fake news you can trust."

41.    The Bee runs and controls a website that exposes foolishness, mocks absurdity, and highlights hypocrisy in faith, politics, and culture through satire, humor, and parody. *See* The Babylon Bee, https://babylonbee.com.

42.    Millions of people view The Bee's website each month, and California is the Bee's third largest state in terms of audience reach.

43.    The Bee has accounts on social media platforms like X, Facebook, Instagram, and YouTube where it republishes its articles, posts videos, and republishes third-party content.[2]

---

[2] *See* The Babylon Bee, X, https://bit.ly/3N3apJ7; The Babylon Bee, Facebook, https://bit.ly/3XLkpfj; The Babylon Bee, YouTube, https://bit.ly/3XLztcy; The Babylon Bee, Instagram, https://bit.ly/3TLjPgq.

44.    The Bee currently has four million followers on X, two million followers on Instagram, over one and a half million followers on Facebook, and over one and a half million subscribers on YouTube.

45.    The Bee's articles generate millions of "impressions"—i.e., instances when a user sees its web page or social media post.

46.    The Bee's articles also generate tens of thousands of "likes" and "reposts" on social media.

47.    As one example, The Bee posted an article entitled "The Babylon Bee has obtained this exclusive, official, 100% real Gavin Newsom election ad" on X on September 18, 2024.[3] The Babylon Bee (@TheBabylonBee), X (Sept. 18, 2024), https://perma.cc/5886-HDTJ.

48.    As of September 25, 2024, the post had accumulated over thirty-six million views, one hundred and forty thousand likes, forty-seven thousand reposts, and seven thousand quotes.

49.    The Bee posts between six to eight articles on its website during the workweek and three to five articles during the weekends and then republishes those articles on X, Facebook, and Instagram.

50.    The Bee also publishes videos that it creates on YouTube.

---

[3] For some permanently linked multimedia content such as videos, audio, or images, the viewer may need to click on the "View the live page" icon at the top right of the page to view the content.

9

51.    The Bee posts about various topics, including the economy, California, fall traditions, government censorship, and much else.[4]

 

 

52.    The Bee regularly posts about politics, elections, and politicians.

---

[4] *Fast-Food Meal Costs Family $100 After They Idle In Drive-Thru For Ten Minutes*, Babylon Bee (Mar. 15, 2022), https://perma.cc/L2ZL-48QR; *Residents Become Chief Export Of California*, Babylon Bee (Aug. 30, 2022), https://perma.cc/RRP8-DT69; *Ohio Restaurant Unveils New Pumpkin Spice Cat,* Babylon Bee (Sept. 21, 2024)*,* https://perma.cc/CX62-KUVH. *Governor Abbott Declares Texas Sanctuary State for Memers*, Babylon Bee (Sept. 19, 2024), https://perma.cc/29ZD-LJS5.

53.   For example, before September 17, 2024, The Bee posted articles about Presidential candidates Donald Trump and Kamala Harris, Vice Presidential candidates J.D. Vance and Time Walz, and voting in California.

54.   Screenshots of these headlines are included in Exhibit 1 and the posts are viewable here:

- *Kamala Responds to Criticism Over Lack of Policies by Posting Another Truck Stop Junk Food Video*, Babylon Bee (Sept. 6, 2024), https://perma.cc/L7X6-DFY3.

- *Trump Team Reveals Debate Strategy: Trump Will Cede All His Time To Kamala And Then Quietly Play With His Tamagotchi*, Babylon Bee (Sept. 10, 2024), https://perma.cc/S7HM-BFDP.

- *In Brief Moment Of Lucidity, Biden Endorses Trump*, Babylon Bee (Sept. 11, 2024), https://perma.cc/P5VZ-TUF8.

- *Trump Prepares For Debate Against Kamala By Going To Bar And Arguing With Drunks*, Babylon Bee (Sept. 5, 2024), https://perma.cc/C7J6-47BX.

- *Kamala Harris Unveils New Economic Platform 'We Must Seize the Means of Production and Execute the Bourgeoisie'*, Babylon Bee (Aug. 18, 2024), https://perma.cc/8TTE-33H8.

- *Tim Walz Asks Guy Guarding Tomb Of The Unknown Soldier Why He Doesn't Just Desert Him*, Babylon Bee (Aug. 10, 2024), https://perma.cc/5KT6-76YS.

- *Vance Dons Helmet And Body Armor In Preparation To Run With Trump*, Babylon Bee (July 15, 2024), https://perma.cc/7PWK-2F7E.

- *Trump Adds A Kennedy In Hopes He Will Draw All The Sniper Fire*, Babylon Bee (Aug. 23, 2024), https://perma.cc/A62V-97C8.

- *Democrat Governors Promise They Will Do Everything In Their Power To Make Elections Appear Legitimate*, Babylon Bee (Apr. 12, 2024), https://perma.cc/5Y27-ZZ9W.

- *Democrats Concerned California Wildfires May Burn Up Their Stock of Prefilled Kamala Harris Ballots*, Babylon Bee (Sept. 12, 2024), https://perma.cc/PX7S-MKC7.

- *Newsom Issues Ban on Legal-Citizen Voting*, Babylon Bee (May 23, 2024), https://perma.cc/XNL7-SPMF.

- *California Passes Law Requiring People Fail A U.S. Civics Exam To Be Eligible To Vote*, Babylon Bee (Aug. 12, 2024), https://perma.cc/36T6-3ECQ.

55.    The Bee intentionally digitally created or modified some of the images contained in the bullet points above.

56.    Before September 17, 2024, The Bee also posted articles about President Biden and COVID-19, Vice President Harris and Hillary Clinton, President Biden and elections, and Donald Trump.

57.    Screenshots of these headlines are included in Exhibit 2 and some of the posts are viewable here:

- *New White House Doctor Sadly Informs Biden Only Cure For COVID Is Euthanasia*, Babylon Bee (July 18, 2024), https://perma.cc/DW4A-5N69.

- *Hillary Clinton Meets With Kamala To Help Her Improve Her Black Accent*, Babylon Bee (Aug. 1, 2024), https://perma.cc/LVN7-AL4R.

- *In Victory Speech, Biden Assures Americans Elections Were 'Mostly Legitimate'*, Babylon Bee (Nov. 9, 2020), https://perma.cc/DCB6-4VNF.

- *Biden Unveils Official Campaign Slogan 'Death To America'*, Babylon Bee (Apr. 17, 2024), https://perma.cc/48GW-TW9W.

58.    The Bee intentionally digitally created or modified the image contained in bullet point one above.

59.    Since September 17, 2024, The Bee has posted articles about Governor Newsom's new law (that, coincidentally, is the basis of this lawsuit) and Vice-Presidential candidate Tim Walz.

60.    Screenshots of these headlines are included in Exhibit 3 and the posts are viewable here:

- *'We Can't Afford Another Four Years Of This!' Shouts Running Mate Of Candidate Who Has Been Leading Country for Four Years*, Babylon Bee (Sept. 21, 2024), https://perma.cc/4LVU-UGXM.

- *Furious Gavin Newsom Bans A.I. Images After Getting Tricked Into Thinking Pic of Trump As A Mer-Man Was Real*, Babylon Bee (Sept. 18, 2024), https://perma.cc/35Q7-ZNDD.

- *Here Are 9 AI-generated Deep Fakes Of Gavin Newsom That Are Illegal To Share In California*, Babylon Bee (Sept. 18, 2024), https://perma.cc/38CA-XSEV.

- The Babylon Bee (@TheBabylonBee), X (Sept. 17, 2024), https://perma.cc/74L2-ENAR.

61.    The Bee intentionally digitally created or modified some of the images contained in the bullet points above.

62.    The Bee intends to continue to create and post content on its own website, X, Facebook, Instagram, and YouTube materially similar to the content referenced in paragraphs 52–61, meaning the Bee will post digitally created or modified satire and parody about politicians, including Donald Trump, Kamala Harris, Gavin Newsom, presidential and vice presidential candidates for office who appear on the ballot in California, other candidates who appear on the ballot in California, elected officials saying or doing something in connection to an election in California, and ballots, voting machines, and voting sites related to an election in California.

63.    The Bee also intends to continue to create and post digitally created or modified content on its own website, X, Facebook, Instagram, and YouTube materially similar to the content referenced in paragraphs 52–62 that violate or arguably violate AB 2839 and 2655.

14

64.    As with satire and parody more generally, the Bee intends to and desires to have these posts expose bad ideas, cause viewers to reflect on the consequences of those ideas, and prompt viewers to take appropriate action to remedy the consequences of those ideas. *See supra* ¶¶ 24–38.

65.    The Bee created the content identified in paragraphs 52–61 and creates and will create materially similar content that is intentionally digitally created or modified, knowing that the content is not literally true.

66.    Indeed, the purpose of The Bee's satire and parody—like other satire and parody—is to create content that is not literally true in all respects, and so The Bee knows that at least some of that content is literally false or acts without regard to that literal truth, but The Bee does so anyway to prove a broader point.

67.    The Bee thus follows the traditional path for satire and parody by mimicking the original for maximum effect. *See supra* ¶¶ 24–38.

68.    Ironically, some of The Bee's satirical headlines have become actual news stories in time.

69.    To date, over one hundred of the Bee's satirical headlines have later become actual headlines to date. *Cf.* Kassy Dillon, *When satire becomes reality: Nearly 100 Babylon Bee joke stories have come true*, Fox News ( Mar. 26, 2023), https://perma.cc/PJF9-7DEN.

70.    Here are two examples, with the satire on the left and the real articles on the right.[5]







71.    The Bee's critics have denounced its approach.

---

[5] *Compare Xi Jinping Criticizes Trudeau's Heavy-Handed Approach*, Babylon Bee (Feb. 15, 2022), https://perma.cc/3N7P-4DQS *and 9 Reasons Not To Worry About The Tanking Economy*, Babylon Bee (Sept. 26, 2022), https://babylonbee.com/news/9-reasons-not-to-worry-about-the-tanking-economy/ *with China slams Canada over Hong Kong, Ottawa protests*, India Blooms (Feb. 23, 2022), https://perma.cc/FA4M-ZGUN *and* Michelle Singletary, *7 ways a recession could be good for you financially*, Wash. Post (Sept. 29, 2022), https://perma.cc/B76H-Y9KF.

72.    One critic maintained that "even if the Babylon Bee's satire itself should not be considered misinformation, its satire draws on and reinforces actual misinformation and conspiracy." Parker J. Bach, *Can the Right Make Good Satire Without Collapsing Due to Fake News?*, Slate (June 22, 2021), https://perma.cc/FB2X-6KMS.

73.    One article accused The Bee and other satirical sites of "Helping [to] spread misinformation on social media." Peter Suciu, *Not Fake News— Satire Is Helping Spread Misinformation On Social Media*, Forbes (Feb. 2, 2024), https://perma.cc/QL9L-QYNV.

74.    One reporter accused The Bee of being a "far-right misinformation site[.]" *New York Times: Far-Right misinformation site The Babylon Bee uses "satire" claim to Protect its presence on Facebook*, Twitchy (Mar. 22, 2021), https://tinyurl.com/yc6ck5sv.

75.    Another reporter called The Bee "dangerous." Libby Emmons, *CNN reporter claims The Babylon Bee is dangerous but The Onion is hilarious*, The Post Millennial (Jan. 7, 2020), https://tinyurl.com/khbcbbax.

76.    Some of The Bee's satirical articles have been mistaken for real news articles.

77.    For example, Donald Trump once presumed a satirical article written by The Bee was a real news article and retweeted it. The article was entitled, "Twitter Shuts Down Entire Network to Slow Spread Of Negative Biden News." David Jackson, *Trump retweets satirical news story about Joe Biden and Twitter*, USA Today (Oct. 16, 2020, 9:45am), https://perma.cc/83LJ-Z5XT.

78.    Fact-checking sites have reviewed The Bee's satirical posts for factual accuracy to determine if the posts are, indeed, satire.

79.    Snopes is one such fact-checker.

80.    Snopes is "the oldest and largest fact-checking site online, widely regarded by journalists, folklorists, and readers as an invaluable research companion." Snopes, About Us, https://perma.cc/LL39-5BKW.

81.    Snopes fact checks and provides "original investigative reporting" "[w]hen misinformation obscures the truth." *Id.*

82.    Snopes has fact-checked dozens of satirical articles posted by The Bee, including articles posted as recently as August 2024. Snopes, https://perma.cc/E7BB-26SX.

83.    For example, The Bee posted the following three articles.[6]





_____

[6] *CNN Purchases Industrial-Sized Washing Machine To Spin News Before Publication*, Babylon Bee (Mar. 1, 2018), https://perma.cc/G4EKF9VS; *Ocasio-Cortez Appears On 'The Price Is Right,' Guesses Everything Is Free*, Babylon Bee (Apr. 12, 2019), https://perma.cc/3MXWJ6Q6; and *Ninth Circuit Overturns Death Of Ruth Bader Ginsburg*, Babylon Bee (Sept. 21, 2020), https://perma.cc/9TBH-6HUX.



84.    Under the guise of preventing "misinformation," Snopes and the newspaper USA Today initially reviewed these articles for accuracy, rated them as "false," and even suggested they were intentionally misleading.

85.    Later, Snopes and USA Today changed course and confirmed that the articles were satire.[7]

86.    USA Today verified the article about Justice Ginsburg after consulting fifteen different sources.

87.    The Bee has also experienced censorship by social media platforms because of the content of their posts.

88.    For example, during Justice Barrett's confirmation hearing, Facebook determined that The Bee "incit[ed] violence" by posting a Monty

---

[7] David Mikkelson, *Did CNN Purchase an Industrial-Sized Washing Machine to Spin News?*, Snopes (Mar. 1, 2018), https://perma.cc/BN6Q-3YBP; *Dan Evon, Did U.S. Rep. Ocasio-Cortez Repeatedly Guess 'Free' on TV Show 'The Price is Right?'*, Snopes (Apr. 15, 2019), https://perma.cc/NM62-NXSS; Chelsey Cox, *Fact check: Satirical claim that the 9th Circuit Court of Appeals overturned Ginsburg's death*, USA Today (Sept. 27, 2020), https://perma.cc/93Y9-PZZY.

Python-inspired satire piece entitled, "Senator Hirono Demands ACB Be Weighed Against a Duck to See If She Is a Witch." When challenged, Facebook refused to change its determination. *See AGAIN! Facebook censors and penalizes The Babylon Bee for the most ridiculous article ever*, Not the Bee (Oct. 20, 2020), perma.cc/7FG5-GENV.

89.    Instagram determined that The Bee's CEO violated Instagram's community guidelines against "harmful false information" and "hate speech or symbols" for sharing a Slate article entitled, "It's About Time for Us to Stop Wearing Masks Outside," along with the comment, "Sane people never did this." *See Babylon Bee CEO posted this to Instagram and they're now threatening to ban him for "harmful false information" and "hate speech." WHAT??*, Not the Bee (Apr. 18, 2021), perma.cc/4WUV-5AYY.

90.    YouTube flagged The Bee as a "violent criminal organization[]" and removed its video titled "If the LEAKED Nashville Shooter Manifesto is legit, what does it say about censorship in the US?" Seth Dillon (@SethDillion), X (Nov. 8, 2023, 6:44 AM), perma.cc/ZCJ6-4WJ7. Even after appealing the mischaracterization of the content, YouTube held to its determination that the video violated its violent criminal organization policy. Seth Dillon (@SethDillion), X (Nov. 8, 2023, 10:48 AM), perma.cc/FMF9-R8MY.

91.    Twitter also suspended The Bee's account for "hateful conduct" under its content moderation policies after it named U.S. Assistant Secretary for Health Dr. Rachel Levine the site's "Man of the Year." Seth Dillon (@SethDillion), X (Mar. 20, 2022, 5:52 PM), perma.cc/7M3L-XJGZ.

92. Twitter refused to reinstate The Bee unless it agreed to delete the tweet.

93. Because The Bee refused to do so on principle, Twitter did not reinstate The Bee's account.

94. This incident, among other considerations, culminated in Elon Musk purchasing Twitter to restore free speech on the platform.

95. Had Twitter not been sold to Musk, The Bee would have remained banned from the platform unless and until they censored themselves by deleting the violative tweet. Gabriel Hays, *The Babylon Bee's Twitter account reinstated by Elon Musk after suspension for transgender joke: 'We're back,'* Fox News (Nov. 18, 2022), perma.cc/TU3A-8NGD.

96. After Musk purchased Twitter (now X), he reinstated The Bee's account almost immediately.

97. X has not suspended, removed, or taken any adverse action against The Bee's X account since Musk purchased the platform.

98. Musk significantly amended X's content moderation policy that had been the basis for Twitter's suspension of The Bee's account, and The Bee's content does not violate X's current content moderation policy.

## III. Rickert actively engages in political expression with the public.

99. Rickert immigrated to the United States from Taiwan.

100. She is an attorney who practices law in California.

101. Rickert has served as a legal expert for media outlets such as CBS News, MTV, People Magazine, US Weekly, and others.

21

102.   Rickert recently joined a public-interest law firm in California that focuses on issues involving religious freedom, free speech, election integrity, parental rights, and the rights of children.

103.   Rickert has owned and operated her own law firm since 2005—the Law and Mediation Offices of Kelly Chang ("law firm").

104.   Rickert's law firm has its own blog that she alone operates and controls. *See* Blog, https://purposedrivenlawyers.com/blog/ (last visited Sept. 26, 2024).

105.   Rickert has final editorial control over the content posted on the law firm's blog and therefore considers it to be her personal blog.

106.   No one has the authority to post on this blog except for her and no one has posted on this blog except for her.

107.   No third parties can post comments to the blog because Rickert disabled the comment section and has no present intention of re-engaging the comment feature.

108.   Rickert curates the content on the blog by selecting which blogs to post consistent with the types of expression she desires to communicate and to reflect the law firm's values.

109.   Over the last year, Rickert has written, created, and posted over seventy posts for the blog.

110.   Rickert has written posts about abortion, gender ideology, Gavin Newsom, California bills, parental rights, elections, politicians, and other topics.

111. Several hundred people subscribe to her blog, including subscribers in California, and countless more view it on her website, including other California residents.

112. Rickert also has personal accounts on social media sites, including X, Facebook, Instagram, and TikTok.

113. Rickert's X and Instagram accounts are public; she currently has over 1,600 followers on X, over 25,000 followers on Instagram, and nearly 400,000 followers on TikTok, including many followers in California.

114. Rickert's Facebook account is private, but she has 7,400 followers on Facebook.

115. Rickert regularly posts on these accounts on issues related to politics, elections, and culture.

116. For example, before September 17, 2024, Rickert posted or reposted about quotes she attributed to Kamala Harris, Tim Walz, politics, society, and cultural and moral issues.

117. Screenshots of these posts are included in Exhibit 4.

118. Since September 17, 2024, Rickert has desired to post or repost additional content on her blog and her social media accounts, but she has refrained from doing so because of AB 2839 and AB 2655.

119. For example, Rickert would like to post a parody video that was intentionally digitally created by a conservative political commentator of Presidential candidate Kamala Harris ("Harris Parody Video").

120. The Harris Parody Video is available on X. *See* @MrReaganUSA, *Kamala Ad 2 PARODY*, X (July 26, 2024, 6:23am), https://perma.cc/M45N-G9BW.

121. Below is a still screenshot of the Harris Parody Video posted on X.



122. Rickert desires to post similar satirical videos created by the same commentator.

123. Those videos are available at

- @MrReaganUSA, Kamala Harris Ad PARODY, YouTube (July 2024), https://perma.cc/AM2V-RMCK.

- @MrReaganUSA, Kamala Harris Ad PARODY 2, YouTube (July 2024), https://www.youtube.com/watch?v=RIjoPqIcyaw.

- @MrReaganUSA, Kamala Harris Ad PARODY 3, YouTube (Aug. 2024), https://www.youtube.com/watch?v=XMcPVQAA3rc.

124.  Rickert would like to post the Harris Parody Video and comparable videos because she thinks they are funny and creative and believes that the laughter generated by the videos will be good for people and that the statements in the videos will cause people to think carefully about certain aspects of Harris's candidacy.

125.  Rickert learned about the Harris Parody Video on September 17, 2024, after viewing Governor Newsom's post on X that he passed a law banning that content. *See infra* ¶¶ 157–60.

126.  If not for AB 2839 and AB 2655, Rickert would have immediately posted the Harris Parody Video, and the other videos referenced above in paragraphs 119–124.

127.  In addition to the Harris Parody Video and other similar videos, Rickert has refrained from posting other content, including intentionally digitally modified videos and images of Kamala Harris asking illegal immigrants to vote, appearing in a Seinfeld episode, wearing communist attire, wearing a "Make USA Great Again" hat, and speaking to a communist gathering, and a digitally altered video of Governor Newsom endorsing Donald Trump.

128.  Rickert has refrained from posting content included in Exhibit 5 and that content is viewable here:

- Defiant World (@DefiantWorld), X (Sept. 20, 2024, 8:20 AM), https://perma.cc/U8YP-22SE.

- Charlie Kirk (@charliekirk11), X (Sept. 7, 2024, 11:37 PM), https://x.com/charliekirk11/status/1832624311573663988.

- Elon Musk (@elonmusk), X (Sept. 2, 2024, 1:18 PM), https://perma.cc/J92B-HYPC.

- Drew Hernandez (@DrewHLive), X (Aug. 31, 2024, 6:40 PM), https://perma.cc/AU5Z-BEQK.

- Donald J. Trump (@realDonaldTrump), X (Aug. 18, 2024, 7:50 AM), https://perma.cc/KF9Q-3U75.

- Brenden Dilley (@Warlord Dilley), X (Sept. 18, 2024, 5:35 AM), https://perma.cc/3HT4-TT8N.

129.  But for AB 2839 and AB 2655, Rickert would immediately post and repost the content identified in paragraphs 127–128 on her blog or her social media accounts.

130.  She would also post content on her blog or X, Facebook, or Instagram materially similar to the content referenced in paragraphs 118–128, meaning Rickert would post intentionally digitally created or modified content—including satire or parody—about politicians, including Kamala Harris, Gavin Newsom, future presidential and vice presidential candidates for office who appear on the ballot in California, other candidates who appear on the ballot in California, elected officials saying or doing something in connection to an election in California, and ballots, voting machines, and voting sites related to an election in California.

131.  In addition to the content identified in paragraphs 118–128, Rickert would like to, but has refrained from posting, the following images on her social media accounts.

 



132.  The three above images been digitally modified to depict Presidential candidate Donald Trump doing something that he did not do.

133.  Rickert desires to caption the post containing these images as: "This is the strategy to get Kamala Harris elected—political retaliation" or something materially similar.

27

134.  Rickert has refrained from posting the content identified in paragraphs 131–133 on her social media platforms because of AB 2839 and AB 2655.

135.  But for AB 2839 and AB 2655, Rickert would immediately post the images and text identified in paragraphs 131–133 on at least one of her social media accounts, including X, Facebook, or Instagram.

136.  Rickert has posted and will republish satire or parody that she knows is not literally true in all respects, meaning she knows at least some of that content is literally false or acts without regard to that literal truth.

137.  Rickert has also posted and will republish other content that is not satire or parody that she knows is not literally true, meaning she knows some of that content is false or acts without regard to that literal truth.

138.  Rickert has posted and desires to post such content, like that identified in paragraphs 118–133 and materially similar content, even though she knows it is not literally true because she believes such content helps to make certain political arguments that cannot be made with the literal truth.

139.  Rickert has been subjected to past instances of censorship or threatened censorship because of her posts on social media for posts that were materially different than the posts identified in paragraphs 118–133.

140.  For example, Facebook, Instagram, and TikTok have removed content from her account between ten and twenty times.

141.  Likewise, the State Bar of California improperly began to investigate Rickert in 2022 for a TikTok video that she created which

commented on abortion and a then-pending California law regarding abortion.

142.   The post generated many reactions on TikTok, and several users commented about how to file complaints with the State Bar of California.

143.   After conducting a month-long investigation, the State Bar of California closed the investigation.

144.   But this investigation caused Rickert to rarely post on TikTok to avoid future complaints related to her bar license.

## IV.   California accelerates passage of AB 2839 and AB 2655 to confront conservative political commentary.

145.   California began considering the bills for AB 2655 and AB 2839 in February 2024.

146.   The bills were proceeding through the regular, slow legislative process.

147.   But, in July 2024, a conservative political commentator created the Harris Parody Video.

148.   The video used an AI-generated voiceover to mimic Harris's voice and was designed to mimic a campaign ad.

149.   The commentator entitled the video "Kamala Harris Campaign Ad PARODY" and posted the video on X.

150.   That same day, Elon Musk reposted the Harris Parody Video on X, where it gained over 100 million views. Elon Musk (@elonmusk), X (July 26, 2024), https://perma.cc/PL28-7QGE.

151.   Two days later, Governor Newsom posted a photo of a news story discussing Musk's retweet of the Harris Parody Video, asserting that the video "should be illegal" and promising to sign "a bill in a matter of weeks to make sure it is." Gavin Newsom (@GavinNewsom), X (July 28, 2024), https://perma.cc/V6C7-R2H3.

152.   The passage of AB 2655 and AB 2839 took off from there.

153.   After Governor Newsom's tweet, the California legislature accelerated steps to ensure that AB 2655 and AB 2839 would pass during its current legislative session.

154.   The bills passed through the California legislature in August, only about one month after Governor Newsom's promise to make parody videos like the Harris Parody Video "illegal."

155.   Governor Newsom signed both bills on September 17, 2024.

156.   On that same day, Governor Newsom posted another tweet declaring that he had "just signed a bill to make this illegal in the state of California." Gavin Newsom (@GavinNewsom), X (Sept. 17, 2024, 4:41 PM), https://perma.cc/J3RC-X9NA.

157.   Below is a screenshot of the Governor Newsom's post.

30



158. By "this," and as read in context, Governor Newsom meant the Harris Parody Video.

159. Also on September 17, 2024, the creator of the Harris Parody Video filed a lawsuit challenging the laws. *See Kohls v. Bonta*, Case No. 24-cv-02527 (E.D. Cal. Sept. 17, 2024), ECF No. 1.

160. California is defending the laws, claims they are constitutional, never disagrees that AB 2839 prohibits the video and others like it, and

never disavows enforcing the laws. *See* Opp'n to Pls.' Mot. for Prelim. Inj., *Kohls v. Bonta*, Case No. 24-cv-02527 (E.D. Cal. Sept. 23, 2024), ECF No. 9.

## V.    California acknowledges that AB 2839 restricts core political speech.

161.    California acknowledged throughout the legislative process that AB 2839 imposed serious burdens on speech.

162.    For example, in April 2024, the Assembly Committee on Judiciary reaffirmed that the bill covered "the right to speak about elections," "the right to receive information regarding them," and "political speech" and would be subject to "strict scrutiny." *See* Exhibit 6 (with report excerpts). The Committee recognized that "[t]he use of questionable tactics to win an election are as old as America's democracy." The Committee acknowledged that the bill "implicates both the right to speak about elections, as well as the right to receive information regarding them"; implicates "political speech" subjecting it to "the most exacting legal review"; and acts "as a prior restriction on speech … subject to strict scrutiny."

163.    The Committee moved the bill forward even though it could not "ignore the longstanding preference of the courts to protect all forms of speech" or how "the current Supreme Court has demonstrated a willingness to greatly expand the scope of speech rights, especially when the speaker's views align with the court's majority."

164.    In the end, the Committee concluded that "[t]he constitutional questions posed by this bill present an exceedingly difficult decision." And, the Committee said, "while this bill is certainly designed to provide the

greatest chance of withstanding constitutional review, it is almost guaranteed to be the subject of litigation."

165.  The Committee anticipated that the bill "will almost certainly be the target of immediate litigation."

166.  Then, in June 2024, the Senate Judiciary Committee published a report noting that AB 2839 "prohibits certain forms of speech" and "implicates the protections of the First Amendment." As before, the Committee thought "this bill may face legal challenge" as "most restrictions on political speech" had. But the Committee felt the bill was "arguably narrowly tailored." *See* Exhibit 7 (with report excerpts).

167.  Later in August—after Governor Newsom's tweet condemning the Harris Parody Video—the full Senate amended the bill.

168.  The Senate's amendment struck language that had previously stated: "This section does not apply to materially deceptive content that constitutes satire or parody." *See* Exhibit 8 (indicating changes between August 15, 2024 and September 17, 2024 with additions in *blue italics* and deletions in ~~red strikeout~~).

169.  The bill's co-sponsor later explained that "[w]e've worked with the Governor's office on Senate amendments that require deep fake parody material to be labeled as being digitally manipulated for those purposes … Additionally, recent amendments add an urgency clause—that was a great

33

idea—so the bill can take effect before the November 5, 2024 general election."[8]

170.  AB 2839 passed the California legislature with a declaration of urgency via two supermajority votes and AB 2839 took effect immediately upon the Governor's signature.

171.  Governor Gavin Newsom signed the bill on September 17, 2024, so it is now in effect.

## VI.  AB 2839 targets political expression, especially satire and parody.

172.  AB 2839 applies to a "person, committee, or other entity." Cal. Elec. Code § 20012(b).

173.  AB 2839 targets "materially deceptive content," defined as "audio or visual media that is digitally created or modified, and that includes, but is not limited to, deepfakes, such that it would falsely appear to a reasonable person to be an authentic record of the content depicted in the media." Cal. Elec. Code § 20012(f)(8)(A)–(B).

174.  AB 2839 applies to "materially deceptive content" communicated through an "advertisement or other election communication." Cal. Elec. Code § 20012(b)(1).

175.  "Election communication" is "any general or public communication not covered under 'advertisement' that is broadcast by or

---

[8] Remarks in support of Concurrence with Senate Amendments, Aug. 30, 2024, 4:27:44–28:06, https://www.assembly.ca.gov/media/assembly-floor-session-20240830?time[media-element3753]=16064.105438. .

through television, radio, telephone, or text, distributed through the internet, or disseminated by print media, … and other similar types of communications, that concerns any of the following." Cal. Elec. Code § 20012(f)(5).

176.  "Election communication" covers communications, including those about "[a] candidate for office or ballot measure." Cal. Elec. Code § 20012(f)(5)(A).

177.  AB 2839 bans any person or entity from knowingly distributing with malice "an advertisement or other election communication containing materially deceptive content of"

- a "candidate for any federal, state, or local elected office in California portrayed as doing or saying something that the candidate did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a candidate";

- "[a]n elections official portrayed as doing or saying something in connection with an election in California that the elections official did not do or say if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests";

- "[a]n elected official portrayed as doing or saying something in connection with an election in California that the elected official did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a candidate or is

reasonably likely to falsely undermine confidence in the outcome of one or more election contests;" or

- "[a] voting machine, ballot, voting site, or other property or equipment related to an election in California portrayed in a materially false way if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests." Cal. Elec. Code § 20012(b)(1).

178.  AB 2839 defines "malice" as "knowing the materially deceptive content was false or with a reckless disregard for the truth." Cal. Elec. Code § 20012(f)(7).

179.  AB 2839 compels and restricts satire or parody related to subjects governed by the law.

180.  AB 2839 requires that any person or entity who posts "satire or parody" label the post with a disclosure saying, "This ____ has been manipulated for purposes of satire or parody." Cal. Elec. Code § 20012(b)(3).

181.  AB 2839 forbids any person or entity from republishing any "satire or parody" without a disclosure saying, "This ____ has been manipulated for purposes of satire or parody." Cal. Elec. Code § 20012(b)(3)–(4).

182.  Refusing to include the required label on republished content "is evidence of intent to knowingly distribute" election communications "containing materially deceptive content." Cal. Elec. Code § 20012(b)(4)(B).

183.   AB 2839's label must be "easily readable by the average viewer" and "no smaller than the largest font size of other text [if any] appearing" in the content. Cal. Elec. Code § 20012(b)(2)(B), (3).

184.   For a video, the text must appear throughout the duration of the video, and while for audio, "a clearly spoken" disclosure must be repeated during several intervals. Cal. Elec. Code § 20012(b)(2)(B), (3).

185.   AB 2839 begins to apply one hundred and twenty days before any election in California and stops applying either the day of the election or sixty days after the election depending on the subject matter of the content. Cal. Elec. Code § 20012(c).

186.   The Attorney General, Secretary of State, District Attorney, and City Attorney have the authority to "seek injunctive or other equitable relief prohibiting the distribution of the materially deceptive content" and are entitled to attorneys' fees and costs for the action. Cal. Elec. Code § 20012(d)(1).

187.   The Attorney General, Secretary of State, District Attorney, and City Attorney also have authority to "bring an action for general or special damage against" a person or entity who "distributed or republished the materially deceptive content" and are entitled to reasonable attorney's fees and costs. Cal. Elec. Code § 20012(d)(2)(A).

188.   AB 2839 has many exemptions.

189.   For example, AB 2839 does not apply to "materially deceptive content" in a broadcasting station's "bona fide" news if the station includes a disclosure. Cal. Elec. Code § 20012(e)(1).

37

190.  AB 2839 does not apply to a broadcasting station that is paid to broadcast "materially deceptive content" if certain conditions are met. Cal. Elec. Code § 20012(e)(2).

191.  AB 2839 does not apply to certain broadcasters, online newspapers, magazines, or periodicals that publish "materially deceptive content" if they include a disclosure. Cal. Elec. Code § 20012(e).

192.  The disclosure requirement for broadcasters, newspapers, magazines, or periodicals is not subjected to the same size regulations as the label for as satire or parody. Cal. Elec. Code § 20012(e)(2)–(3).

193.  AB 2839 also exempts broadcasting stations and internet websites from special damages for distributing materially deceptive content if they "did not create the content." Cal. Elec. Code § 20012(d)(2).

194.  AB 2839 does not apply to "an interactive computer service, as defined in Section 230(f)(2)" of the Communications Decency Act.[9] Cal. Elec. Code § 20012(e)(4).

195.  Nor does AB 2839 apply to "candidate[s] for elective office" who "portray" themselves "as doing or saying something that the candidate did not do or say" if the content is labeled. Cal. Elec. Code § 20012(b)(2), (F)(1).

---

[9] The Communications Decency Act defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.A. § 230(f)(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.  California recognizes that AB 2655 restricts core political speech.**

196.  California acknowledged throughout the legislative process that AB 2655 imposes serious burdens on speech and would be "vulnerable" to a constitutional challenge.

197.  For example, the Assembly Committee on Judiciary published a report in April 2024 acknowledging that the law "would interfere with both the expression and reception of information based upon its content." The Committee recognized this was "potentially problematic" because the bill singled "out particular content" that "relates to political candidates and elections," which normally receives full constitutional protection. The Committee admitted "[i]t is difficult to imagine any content more related to 'political expression' and 'discussion of public issues' than content about candidates and elections." The Committee also acknowledged that "opponents of this bill"—including "the industry groups and the ACLU"— "believe that with no sure means to determine what is 'materially deceptive,' the platforms will err on the side of blocking content, thus burdening more speech than is necessary." *See* Exhibit 9 (with report excerpts).

198.  The Committee acknowledged that opponents claimed the bill was not narrowly tailored and that "it will be a court – not the findings and declarations of the bill – that will determine whether the bill is narrowly tailored. The court may consider, for example, if there are other less restrictive and more effective means of protecting election integrity."

199.  When surveying cases pending before the Supreme Court (as of April 2024), the Committee stated that "there is no obvious or certain answer as to whether this bill violates the First Amendment."

200.  Several months later, in a June 2024 Senate Judiciary Committee report, California admitted that "[h]yperbole, distortion, invective, and tirades are as much a part of American politics as kissing babies and distributing bumper stickers and pot holders." California recognized "the extraordinary protection afforded to political speech" under the First Amendment—including "false statements of fact." *See* Exhibit 10 (with report excerpts).

201.  The Senate Judiciary Committee also understood that the bill "could be found to implicate the First Amendment rights of platforms in their editorial discretion."

202.  The Senate Judiciary Committee ultimately concluded that "it is inherently difficult to predict whether this law will be struck down for violating the protections of the First Amendment," especially "in the more politically charged federal judiciary of the day." But, the Committee believed, "it is safe to say [AB 2655] will likely face legal challenge and arguably be vulnerable thereto."

203.  In the final Assembly Floor Analysis in August 2024—just weeks before the bill became law—the California legislature still acknowledged the law may be unconstitutional. That analysis recognized the law "burdens core political speech," would be subject to strict scrutiny under the First

Amendment, and might not be "adequately protect[ed] … against a constitutional challenge." *See* Exhibit 11.

204.   The California legislature passed AB 2655.

205.   Governor Gavin Newsom signed the bill on September 17, 2024, and AB 2655 goes into effect on January 1, 2025.

**VIII. AB 2655 targets political expression.**

206.   AB 2655 applies to "large online platform[s]." Cal. Elec. Code § 20512(h).

207.   Large online platforms are defined as "a public-facing internet website, web application, or digital application, including a social media platform … video sharing platform, advertising network, or search engine that had at least 1,000,000 California users during the preceding 12 months." Cal. Elec. Code § 20512(h).

208.   The law targets "materially deceptive content," which "means audio or visual media that is digitally created or modified, and that includes, but is not limited to, deepfakes and the output of chatbots, such that it would falsely appear to a reasonable person to be an authentic record of the content depicted in the media." Cal. Elec. Code § 20512(i)(1).

209.   "[M]aterially deceptive content" prohibited by the law includes a

- "candidate for elective office portrayed as doing or saying something that the candidate did not do or say and that is reasonably likely to harm the reputation or electoral prospects of a candidate";

41

- "elections official portrayed as doing or saying something in connection with the performance of their elections-related duties that the elections official did not do or say and that is reasonably likely to falsely undermine confidence in the outcome of one or more election contests";

- "elected official portrayed as doing or saying something that influences the election that the elected official did not do or say and that is reasonably likely to falsely undermine confidence in the outcome of one or more election contests;" or

- "voting machine, ballot, voting site, or other property or equipment related to an election in California portrayed in a materially false way if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests. Cal. Elec. Code § 20513.

210.  AB 2655 starts to apply to "materially deceptive content" beginning 120 days before an election in California and ending the day of the election or sixty days after the election depending on the content. Cal. Elec. Code § 20513(e)(1)–(2).

211.  AB 2655 requires large online platforms to take three actions with respect to materially deceptive content.

212.  *First*, AB 2655 requires large online platforms to "provide an easily accessible way for California residents to report that" content should be removed or labeled as "manipulated" and "not authentic." Cal. Elec. Code § 20515(a). This is the "Reporting Requirement."

213. Large online platforms must also respond to the person reporting the content within 36 hours "describing any action taken or not taken … with respect to the content." Cal. Elec. Code § 20515(a).

214. *Second*, AB 2655 demands that large online platforms "develop and implement procedures for the use of state-of-the-art techniques to identify and remove materially deceptive content if" four criteria are met. Cal. Elec. Code § 20513(a). This is the "Removal Requirement."

215. The criteria are: (1) the content has been reported under the Reporting Requirement; (2) the content is "materially deceptive content"; (3) the content is posted within the applicable timeframe; and (4) the large online platform "knows or acts with reckless disregard of the fact that the content meets the" prior three requirements. Cal. Elec. Code § 20513(a).

216. Large online platforms must remove the content within 72 hours. Cal. Elec. Code § 20513(b).

217. Large online platforms must also remove "any identical or substantially similar materially deceptive content" that they had previously removed upon discovery that the content has been reposted. Cal. Elec. Code § 20513(c).

218. *Third*, AB 2655 requires large online platforms to "develop and implement procedures for the use of state-of-the-art techniques to identify materially deceptive content" and label it if three criteria are met. This is the "Labeling Requirement."

219. The criteria are: (1) the content has been reported under the Reporting Requirement; (2) the content is either "materially deceptive

43

content" regardless of when it is posted or the content is "materially deceptive content" and appears in an "advertisement" or "election communication"; and (3) the large online platform "knows or acts with reckless disregard for the fact that the content meets the" prior two requirements. Cal. Elec. Code § 20514(a).

220.   The Labeling Requirement forces large online platforms to label the content within 72 hours of discovery or receipt of a report; that label must state: "This [image, audio, or video] has been manipulated and is not authentic." Cal. Elec. Code § 20514(b)–(c).

221.   The Labeling Requirement also forces large online platforms to "permit users to click or tap on [the label] for additional explanation about the materially deceptive content in an easy-to-understand format." Cal. Elec. Code § 20514(d).

222.   Any person—including the Secretary of State—who has filed a report with a large online platform "may seek injunctive or other equitable relief" to enforce the Reporting Requirement, the Removal Requirement, or the Labeling Requirement. Cal. Elec. Code § 20515(b).

223.   Likewise, the Attorney General, District Attorney, or City Attorney "may seek injunctive or other equitable relief" to enforce the Reporting, Removal, or Labeling Requirements. Cal. Elec. Code § 20516.

224.   By authorizing the government to coerce large online platforms to remove and label content through a reporting process, AB 2655 uses governmental authority and the threat of punishment to coerce private

parties into punishing or suppressing speech based on its content and viewpoint.

225.  Though AB 2655 applies to large online platforms in these ways, the law makes many exceptions.

226.  For example, AB 2655 does not apply to certain online newspapers, magazines, or periodicals that publish "materially deceptive content" if the publisher includes a disclosure. Cal. Elec. Code § 20519(a).

227.  AB 2655 does not apply to a "broadcasting station that broadcasts any materially deceptive content" if the station includes a disclosure. Cal. Elec. Code § 20519(b)(1).

228.  AB 2655 does not apply to a broadcasting station that is paid to broadcast "materially deceptive content" in some situations. Cal. Elec. Code § 20519(b).

229.  AB 2655 does not apply to "materially deceptive content that constitutes satire or parody." Cal. Elec. Code § 20519(c).

230.  AB 2655 applies only to "materially deceptive content" concerning certain candidates—i.e., to persons running for a voter-nominated office as defined in Cal. Elec. Code § 359.5(a), persons running for President or Vice President of the United States, and persons running for the office of Superintendent of Public Instruction. Cal. Elec. Code § 20512(c).

231.  "Materially deceptive content" about candidates who do not meet these criteria is not prohibited.

232.  AB 2655 defines "election in California" to mean "any election where a candidate … is on the ballot, and any election where a statewide

initiative or statewide referendum measure is on the ballot." Cal. Elec. Code § 20512(f).

233.  And AB 2655's removal requirement does not apply to "candidate[s] for elective office" who "portray" themselves "as doing or saying something that the candidate did not do or say" if the content is labeled. Cal. Elec. Code § 20513(d).

## IX.  AB 2839 and 2655 impose overwhelming burdens on The Bee and Rickert, compelling and restricting their speech.

234.  AB 2839 and AB 2655 have imposed and will continue to impose significant pressures and burdens on The Bee's and Rickert's expression.

235.  AB 2839 and AB 2655 use vague and overbroad terms that grant California unbridled enforcement discretion, including but not limited to phrases like "falsely appear to a reasonable person," "reasonably likely to harm the reputation or electoral prospects of a candidate," "undermine confidence in the outcome of [an] … election contest[]," and others.

236.  Whether expression falls into these vague and overbroad categories depends on the subjective perceptions of others, including state enforcement officials.

237.  For example, The Bee once posted an article about U.S. Representative Ocasio-Cortez guessing everything was free on the gameshow "Price is Right." *See supra* ¶¶ 83–86.

238.  The article generated enough attention from viewers—i.e., the presumptively "reasonable person"—that Snopes deemed it necessary to fact-check the article to determine that it was satirical. *See supra* ¶¶ 79–86.

239.   Snopes, USA Today, and others have mistaken The Bee's satirical articles for real news in the past, and that is likely to continue to happen in the future. *See supra* ¶¶ 69–86.

240.   Whether content "harm[s] the reputation … of a candidate" is inherently subjective, vague, and overbroad and depends on others' perception of the effect of the content.

241.   And whether content "harms" the "electoral prospects of a candidate" is inherently subjective, vague, and overbroad because it depends on others' perception of the effect of the content.

242.   AB 2655's exemption for "satire or parody" is also problematic because persons often disagree over whether something is or is not satire.

243.   For example, the Harris Parody Video was clearly marked as a parody. *See, e.g.*, *supra* ¶¶ 119–21.

244.   But Governor Newsom still tweeted that the video should be "illegal." *See supra* ¶¶ 151–57.

245.   Because of the vagueness and overbreadth of AB 2839 and 2655 and their discretionary terms, it is unclear if the following content—including content from a social media account attributed to the Harris presidential campaign that has been accused of "repeatedly deceiv[ing]" viewers "with misleading edits and captions"—would violate those laws:

- Republican Nat'l Comm., *12 Minutes of Democrats Denying Election Results,* (June 23, 2022), https://gop.com/video/12-minutes-of-democrats-denying-election-results/.

47

- Daniel Dale, *Fact Check: Harris campaign social media has repeatedly deceived with misleading edits and captions*, CNN (Sept. 14, 2024, 2:57 PM), https://perma.cc/KUZ2-AMEY.

246. The example in bullet point two above is in Exhibit 12.

247. It is likewise unclear if the digitally altered image below, which depicts Taylor Swift endorsing Donald Trump, violates AB 2839 or AB 2655 by harming a candidate's "electoral prospects," undermining "confidence" in the election, or violating some other clause.



248. As applied here, AB 2839 threatens The Bee and Rickert with attorneys' fees, injunctions, and other forms of punishment for creating, posting, or reposting content they desire to create, post, or repost.

249.   The Bee and Rickert are direct objects of AB 2839 because they each operate their own websites and social media accounts where they regularly post political content—including content that is satire or parody—that is or is arguably regulated by AB 2839 and they distribute that content over the internet.

250.   The Bee posts satirical articles on its website and social media accounts every day.

251.   The Bee has and will continue to post satirical articles on its website and social media accounts containing content that is or is arguably regulated by AB 2839, including intentionally digitally created or modified content portraying candidates in California, elected officials saying something in connection with an election in California, ballots, and voting sites as stated in paragraphs 52–61 above.

252.   The Bee faces a substantial risk that many of its existing articles and social media posts are already actionable under AB 2839.

253.   Meanwhile, Rickert desires to create blog posts and posts on her social media accounts with content that has been intentionally digitally created or modified that would be actionable under AB 2839.

254.   For example, Rickert desires to repost on her blog and social media accounts the Harris Parody Video as stated in paragraphs 118–133 above.

255.   This is the same video that Governor Newsom found to be "illegal" under AB 2839, and therefore posting this video would violate AB 2839.

256.　Rickert desires to post on her blog and social media accounts other content that faces a substantial risk of being actionable under AB 2839—intentionally digitally created or modified content portraying candidates in California, elected officials saying something in connection with a candidate in California, ballots, and voting sites as stated in paragraphs 118–133 above.

257.　Rickert has refrained from posting the content identified in paragraphs 118–133 above on her own blog and social media accounts to avoid being subject to liability under AB 2839.

258.　Rickert would immediately post the content identified in paragraphs 118–133 above or materially similar content but for AB 2839.

259.　The Bee and Rickert also desire to post satirical or parodical content that has been intentionally digitally created or modified on their social media accounts hosted by large online platforms or republish to those accounts such content created by others.

260.　The only way for The Bee and Rickert to publish or republish satire or parody on their own websites or on their social media accounts without violating AB 2839 is by labeling the content ("This ____ has been manipulated for purposes of satire or parody") in a size that complies with AB 2839.

261.　This disclaimer alters the content of the messages The Bee and Rickert want to express by alerting the viewer to the satirical or parodical nature of the communication and thereby depriving the expression of its rhetorical force.

50

262.   This disclaimer also alters the content of the messages The Bee and Rickert desire to express by forcing them to incorporate California's desired messages into their satire or parody.

263.   Neither The Bee nor Rickert are willing to post satire or parody with this label because they do not want this disclaimer to alter their messages and because AB 2839 size requirements ruin the communicative impact of satire or parody.

264.   For example, AB 2839 requires The Bee to alter its headlines or video identified above by stamping the following disclaimer on its content:






265.  And AB 2839 requires Rickert to alter the Harris Parody Video by post the following disclaimer throughout the video:



266.  The Bee has continued to post satirical and parodical content without the disclaimer despite the substantial risk of harm imposed by AB 2839 because The Bee is unwilling to include the disclaimer and unwilling to chill its own speech.

267.  By contrast, Rickert has refrained from posting the content identified in paragraphs 118–133 because she is unwilling to include the disclaimer and unwilling to risk liability under AB 2839.

268.  AB 2839 harms The Bee and Rickert by threatening them, their websites, and their social media accounts for posting content California defines as "materially deceptive content."

269.  AB 2839 likewise harms The Bee and Rickert by conditioning their freedom to post or republish satire or parody on their willingness to include a large disclaimer.

270.  If The Bee or Rickert declines to include the disclaimer, California officials threaten them with lawsuits and penalties.

271.  AB 2655 independently and in conjunction with AB 2839 stifles and burdens The Bee's and Rickert's expression.

272.  AB 2655 requires large online platforms to accept reports of "materially deceptive content" and remove or label that content beginning January 1, 2025.

273.  AB 2655's structure encourages large online platforms to err on the side of removing or labeling content rather than allowing it, even if the content arguably falls within the "satire or parody" exemption of AB 2655.

274.  The Bee posts content on X, Instagram, Facebook, and YouTube, all of which qualify as large online platforms under AB 2655.

275.  Despite these threats, The Bee has and will continue to post intentionally digitally created or modified content on large online platforms that is materially similar to content that it has posted in the past as identified in paragraphs 52–61 above, even if AB 2655 threatens to coerce large online platforms into removing that content.

276.  Material that is similar to content The Bee has posted in the past includes the content identified in paragraphs 52–61 above and other intentionally digitally created or modified content about Donald Trump, Kamala Harris, Gavin Newsom, future presidential and vice presidential candidates for office who appear on the ballot in California, other candidates who appear on the ballot in California, elected officials saying or doing something in connection to an election in California.

277.  Meanwhile, Rickert has accounts with X, Facebook, and Instagram.

278.  Rickert has refrained from posting certain content on her social media accounts because of AB 2655 as described in paragraphs 118–133 above.

279.  For example, Rickert would like to post the Harris Parody Video.

280.  But she has specifically refrained from reposting the Harris Parody Video because Governor Newsom said that AB 2655 makes the video "illegal" and therefore forces social media companies to remove it.

281.  The Bee's and Rickert's posts identified in paragraphs 52–61 and 118–133 above that have been posted have not been removed or labeled by X, Instagram, Facebook, or YouTube, and because this content arguably violates AB 2655, these large online platforms will arguably violate AB 2655 for not removing the content when that law goes into effect.

282.  The Bee and Rickert face a substantial risk that AB 2839 and AB 2655 will cause their content to be removed or labeled by these large online platforms.

283.  X, Facebook, Instagram, and YouTube have certain content moderation policies that govern what content may be uploaded to those platforms.

284.  These platforms' internal policies give them discretion to determine whether particular content violates their policies.

285.  But AB 2839 and AB 2655 impose different content moderation requirements than these platforms' current policies and threaten to impose

54

those requirements under the authority of California and the threat of penalties and damages.

286.  And because these platforms reference applicable state law in their terms of service agreements, AB 2839 and AB 2655 require these platforms to moderate content in ways that they otherwise would not under their existing policies.

287.  For that reason, The Bee, Rickert, and other speakers risk being deplatformed for posting content that violates or arguably violates AB 2839 and AB 2655.

288.   If The Bee continues to post or if Rickert begins posting content that violates AB 2839 or AB 2655, they risk disciplinary action or other sanctions from X, Facebook, Instagram, or YouTube, which may include temporary bans or removal of their accounts.

289.  The Bee's and Rickert's substantial risk of being deplatformed or otherwise punished by these large online platforms for posting their desired content causes them material harm because of content that they have posted in the past as identified in paragraphs 52–61 and 118–133 above or content that they wish to post in the future as identified in these paragraphs.

290.  The Bee's revenue, access to followers and subscribers, and access to a platform of its choice are materially harmed by AB 2839 and AB 2655.

291.  Because of AB 2839 and AB 2655, The Bee faces a substantial risk that the enforcement of these laws will cause it to be removed from these platforms or cause these platforms to label its content if that content is

materially similar to content it has posted in the past as described in paragraphs 52–61 above.

292.  Such removal would impair The Bee's revenue and reputation, cause it to lose access to one or more large platforms to proclaim its messages, and cause it to lose access to the millions of followers and subscribers it has attracted across X, Facebook, Instagram, and YouTube.

293.  Likewise, the risk of being deplatformed for posting content is substantial and would significantly burden Rickert.

294.  If Rickert posted the content she desires to post in violation of AB 2839 and AB 2655 as identified in paragraphs 118–133 above, she risks disciplinary action or other sanctions from the platforms, which may include temporary bans or removal of her account.

295.  These sanctions would harm her reputation among her followers, cause her to lose access to platforms to communicate her preferred messages, views, and opinions, and cause her to lose access to the tens of thousands of followers that she has acquired over X, Facebook, and Instagram.

296.  If not for AB 2839 and AB 2655, Rickert would immediately publish the content listed in paragraphs 118–133 above and would publish materially similar content as described in paragraphs 118–133 above.

297.  AB 2839 and AB 2655 also harm The Bee and Rickert because they wish to view other content creators' content that would be available absent AB 2839 and AB 2655.

298.  They are prejudiced, as viewers of this content, to the extent that AB 2839 and AB 2655 curtail others' protected speech.

56

299. The Bee and Rickert's freedom to engage in their desired expression is burdened by AB 2839 and AB 2655.

## ALLEGATIONS OF LAW

300. Plaintiffs publish, distribute, republish, and circulate content that is subject to AB 2839 and AB 2655.

301. AB 2839 and AB 2655 violate Plaintiffs' constitutional rights, and chill and deter them from exercising their constitutional rights.

302. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have suffered and will suffer ongoing irreparable harm, entitling Plaintiffs to declaratory and injunctive relief.

303. Plaintiffs do not have an adequate monetary or legal remedy for the loss of their constitutional rights.

304. Unless Defendants are enjoined, Plaintiffs will continue to suffer irreparable harm.

## FIRST CAUSE OF ACTION

### Violation of the First Amendment's Free Speech and Free Press Clauses by AB 2839

305. Plaintiffs repeat and reallege each allegation contained in paragraphs 1–304 of this complaint.

306. The First Amendment's Free Speech and Free Press Clauses protect Plaintiffs' ability to create, publish, and distribute their speech.

307. The First Amendment also protects Plaintiffs' right to be free from content, viewpoint, and speaker-based discrimination, overbroad

restrictions on speech, and vague laws allowing unbridled discretion by enforcement officials.

308. Plaintiffs engage in activities protected by the First Amendment when they create, publish, or distribute their own speech or republish the speech of others or view others' speech.

309. AB 2839 uses governmental authority and the threat of punishment to coerce private parties into punishing or suppressing Plaintiffs' speech that Defendants disfavor.

310. AB 2839 constitutes an impermissible and unreasonable restriction of protected speech because it burdens substantially more speech than is necessary to further any governmental interest.

311. As applied and facially, AB 2839 bars and chills speech based on content and viewpoint.

312. As applied and facially, AB 2839 is not content-neutral because it targets only "materially deceptive content," and only a certain subset of that kind of speech. Specifically, it targets speech that is "reasonably likely to harm the reputation or electoral prospects of a candidate" and speech that is "reasonably likely to falsely undermine confidence in the outcome of one or more election contests."

313. AB 2839 is not content- or viewpoint-neutral because it singles out "satire or parody" by restricting that content unless the "satire or parody" includes a disclaimer.

314.   As applied and facially, AB 2839 is not speaker-neutral because it exempts actual candidates from making "materially deceptive content" if they include a disclaimer in their content.

315.   AB 2839 is unconstitutional as applied to Plaintiffs' speech because AB 2839 is a content-, viewpoint-, and speaker-based regulation that bans, chills, and burdens Plaintiffs' desired speech.

316.   As applied to Plaintiffs, AB 2839 compels speech Plaintiffs object to, interferes with their editorial judgment, and compels them to publish and disseminate speech they object to.

317.   As applied to Plaintiffs, AB 2839 is vague and allows Defendants unbridled discretion to evaluate Plaintiffs' speech and then discriminate against it based on content and viewpoint in determining whether to apply AB 2839.

318.   AB 2839 punishes Plaintiffs for publishing speech Defendants deems to be "materially deceptive content."

319.   AB 2839 prohibits Plaintiffs from publishing their own "satire or parody" without a disclaimer.

320.   AB 2839 compels Plaintiffs to publish a disclaimer as a condition of publishing "satire or parody."

321.   AB 2839 prohibits Plaintiffs from re-publishing third-parties' "satire or parody" without a disclaimer.

322.   AB 2839 compels Plaintiffs to publish a disclaimer as a condition of re-publishing third-parties' "satire or parody."

323.  AB 2839 is substantially overbroad in relation to any legitimate sweep and is facially unconstitutional for that reason.

324.  AB 2839 is substantially overbroad because it does not adequately define various material terms in the statute, including but not limited to "deep fake," "materially deceptive content," "harm the reputation or electoral prospects of a candidate," and "falsely undermine confidence in the outcome of one or more election contests."

325.  AB 2839 also vests unfettered discretion in state officials to define these terms and remove content in accordance with their own subjective ends for election regulations.

326.  Plaintiff Rickert has not and will not engage in certain protected speech because of AB 2839.

327.  If not for AB 2839, Plaintiff Rickert would immediately begin to engage in this protected speech.

328.  AB 2839 imposes a substantial risk of harm on Plaintiff The Babylon Bee because it has posted and will continue to post content that violates or at least arguably violates AB 2839.

329.  Defendants do not serve any compelling or even valid interest in a narrowly tailored way by infringing on Plaintiffs' free speech and free press rights.

330.  Accordingly, facially and as applied to Plaintiffs, AB 2839 violates the First Amendment's protections for free speech and free press.

## SECOND CAUSE OF ACTION

### Violation of the Fourteenth Amendment by AB 2839

331.  Plaintiffs repeat and reallege each allegation contained in paragraphs 1–304 of this complaint.

332.  The Fourteenth Amendment's Due Process Clause prohibits the government from censoring speech using vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some speech and that fail to give speakers sufficient notice regarding whether their desired speech violates AB 2839.

333.  Due process requires that people of ordinary intelligence be able to understand what conduct a given statute or regulation prohibits.

334.  Statutes or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

335.  Statutes, rules, or regulations that authorize or even encourage arbitrary or viewpoint-discriminatory enforcement are void for vagueness.

336.  Plaintiffs, Defendants, and third parties of ordinary intelligence cannot know what content is prohibited by AB 2839.

337.  AB 2839 chills and restrains satirists, political humorists, and other original content-creators, subjecting them to censorship and other punitive sanctions for their speech.

338.  AB 2839 chills and restrains the speech of those wishing to republish certain content prohibited by AB 2839 by subjecting that content to censorship and other punitive sanctions.

339.  AB 2839 does not provide fair notice of what it prohibits.

340.  AB 2839 authorizes and encourages discriminatory enforcement.

341.  AB 2839 uses unconstitutionally vague phrases, including but not limited to "falsely appear to a reasonable person to be an authentic record of the content depicted in the media"; "reasonably likely to harm the reputation or electoral prospects of a candidate"; "reasonably likely to falsely undermine confidence in the outcome of one or more election contests"; and "satire or parody."

342.  Defendants can use this vagueness, and the unbridled discretion it provides, to apply AB 2839 in a way that discriminates against content, viewpoints, and actions Defendants disfavor.

343.  Accordingly, facially and as applied to Plaintiffs, AB 2839 violates the Fourteenth Amendment's Due Process Clause and chills protected speech.

### THIRD CAUSE OF ACTION

### Violation of the First Amendment's Free Speech and Free Press Clauses by AB 2655

344.  Plaintiffs repeat and reallege each allegation contained in paragraphs 1–304 of this complaint.

345.  The First Amendment's Free Speech and Free Press Clauses protect Plaintiffs' ability to speak and to publish and distribute their speech.

346.  The First Amendment also protects Plaintiffs' right to be free from content-, viewpoint-, and speaker-based discrimination, overbroad restrictions on speech, and vague laws allowing unbridled discretion by enforcement officials.

347.   Plaintiffs engage in activities protected by the First Amendment when they create, publish, or distribute their own speech, including when they publish it on third-party online platforms, and view others' speech.

348.   AB 2655 uses governmental authority and the threat of punishment to coerce private parties into punishing or suppressing Plaintiffs' speech that Defendants disfavor.

349.   AB 2655 constitutes an impermissible and unreasonable restriction of protected speech because it burdens substantially more speech than is necessary to further any governmental interest.

350.   As applied and facially, AB 2655 bars and chills speech based on content and viewpoint.

351.   As applied and facially, AB 2655 is not content-neutral because it targets only "materially deceptive content," and only a certain subset of that kind of speech. Specifically, it targets speech that is "reasonably likely to harm the reputation or electoral prospects of a candidate" and speech that is "reasonably likely to falsely undermine confidence in the outcome of one or more election contests."

352.   As applied and facially, AB 2655 is also not content-neutral because it only regulates "materially deceptive content" directed at specific public offices and referenda, not all elections.

353.   AB 2655 is unconstitutional as applied to Plaintiffs' speech because AB 2655 is a content-, viewpoint-, and speaker-based regulation that bans, chills, and burdens Plaintiffs' desired speech (and the publication

of that speech) on large online platforms where they desire to publish and have previously published their speech.

354. As applied to Plaintiffs, AB 2655 is vague and allows Defendants unbridled discretion to coerce large online platforms to report, remove, and label speech and then discriminate based on content and viewpoint in determining whether to apply AB 2655.

355. AB 2655 forces large online platforms where Plaintiffs publish their speech to either create a mechanism where viewers can report Plaintiffs' posts or risk prosecution for not providing that mechanism.

356. AB 2655 uses governmental authority and the threat of punishment to coerce private large online platforms into punishing or suppressing Plaintiffs' speech that Defendants disfavor.

357. AB 2655 forces large online platforms where Plaintiffs publish their speech to either remove "materially deceptive content" as defined by California or risk prosecution for not removing that content.

358. AB 2655 coerces large online platforms to remove any of Plaintiffs' speech published on those platforms deemed "materially deceptive content" as defined by Defendants.

359. AB 2655 forces large online platforms where Plaintiffs publish their speech to label "materially deceptive content" that is not otherwise removable with a label or risk prosecution for not labeling that content.

360. AB 2655 coerces large online platforms where Plaintiffs publish their speech to either label Plaintiffs' speech that is deemed to be "materially

deceptive content" and otherwise fits the criteria for the Labeling Require-
ment or risk prosecution for not labeling that content.

361.  AB 2655 is substantially overbroad in relation to any legitimate
sweep and is facially unconstitutional for that reason.

362.  AB 2655 is substantially overbroad because it does not
adequately define various material terms in the statute, including but not
limited to "deep fake," "materially deceptive content," "harm the reputation
or electoral prospects of a candidate," "falsely undermine confidence in the
outcome of one or more election contests," "something that influences the
election," and "satire or parody."

363.  AB 2655 also vests unfettered discretion in state officials to
define these terms and coerce large online platforms to remove content in
accordance with the officials' own subjective ends for election regulations.

364.  AB 2655 imposes a substantial risk of harm on Plaintiff Babylon
Bee because it has posted and will continue to post content that violates or
at least arguably violates AB 2655.

365.  Plaintiff Rickert has not and will not engage in certain protected
speech because of AB 2655.

366.  If not for AB 2655, Plaintiff Rickert would immediately begin to
engage in this protected speech.

367.  Defendants do not serve any compelling or even valid interest in
a narrowly tailored way by infringing on Plaintiffs' free speech and free
press rights.

368.  Accordingly, facially and as applied, AB 2655 violates the First Amendment's protections for free speech and free press.

## FOURTH CAUSE OF ACTION

### Violation of the Fourteenth Amendment by AB 2655

369.  Plaintiffs repeat and reallege each allegation contained in paragraphs 1–304 of this complaint.

370.  The Fourteenth Amendment's Due Process Clause prohibits the government from censoring speech using vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some speech and that fail to give speakers sufficient notice regarding whether their desired speech violates California's law.

371.  Due process requires that people of ordinary intelligence be able to understand what conduct a given statute or regulation prohibits.

372.  Statutes or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

373.  Statutes or regulations that authorize or even encourage arbitrary or viewpoint discriminatory enforcement are void for vagueness.

374.  Plaintiffs, Defendants, and third parties of ordinary intelligence cannot know what content is prohibited by AB 2655.

375.  AB 2655 does not provide fair notice of what it prohibits.

376.  AB 2655 authorizes and encourages discriminatory enforcement.

377.  AB 2655 uses unconstitutionally vague phrases including but not limited to "falsely appear to a reasonable person to be an authentic record of the content depicted in the media"; "reasonably likely to harm the reputation

or electoral prospects of a candidate"; "in connection with the performance of their elections-relate duties"; "reasonably likely to falsely undermine confidence in the outcome of one or more election contests"; "something that influences the election"; and "satire or parody."

378.  Defendants can use this vagueness, and the unbridled discretion it provides, to apply the AB 2655 in a way that discriminates against content, viewpoints, and actions Defendants disfavor.

379.  Accordingly, facially and as applied to Plaintiffs, AB 2655 violates the Fourteenth Amendment's Due Process Clause and chills protected speech.

## PRAYER FOR RELIEF

Plaintiffs respectfully ask this Court to enter judgment against Defendants and provide the following relief:

1.  An expedited preliminary injunction and a permanent injunction to stop Defendants and any person acting in concert with them from:

    a.  enforcing AB 2839 and AB 2655 as applied to Plaintiffs' constitutionally protected speech and press;

    b.  enforcing AB 2839 and AB 2655 as applied to other similarly speakers engaging in similarly situated speech as Plaintiffs;

    c.  enforcing AB 2839 and AB 2655 facially.

2.  A declaration that AB 2839 and AB 2655, as applied to Plaintiffs and similarly situated speakers, have violated and continue to violate their

First Amendment Rights under the United States Constitution to engage in speech and press;

3.      A declaration that AB 2839 and AB 2655 facially violate the First Amendment protections for speech and press and the Fourteenth Amendment protections for due process;

4.      A ruling concerning the rights and other legal relations of the parties to the subject matter here in controversy that ensures these declarations shall have the force and effect of a final judgment;

5.      An order retaining jurisdiction of this matter for the purpose of enforcing the Court's orders;

6.      An award of Plaintiffs' costs and expenses in this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

7.      The requested injunctive relief without a condition of bond or other security required of Plaintiffs; and

8.      Any other relief that the Court deems equitable and just in the circumstances.


DATED:    September 30, 2024


                                        */s/David A. Shaneyfelt*
                                        David A. Shaneyfelt
                                        *Counsel for Plaintiffs*

**DECLARATION UNDER PENALTY OF PERJURY**

I, Seth Dillon, have reviewed the complaint and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge as to the policies, practices, posts, statistics, articles, intentions, and other factual statements that relate to The Babylon Bee.

Executed this 28th day of September, 2024, at ████████████ Jupiter, Florida.

Seth Dillon

1

### DECLARATION UNDER PENALTY OF PERJURY

2     I, Kelly Chang Rickert, have reviewed the complaint and declare under

3 penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true

4 and correct to the best of my personal knowledge as to the practices, posts,

5 statistics, articles, intentions, and other factual statements that relate to

6 Kelly Chang Rickert.

7

8     Executed this <u>27th</u> day of September, 2024, at <u>Los Angeles</u>,

9 California.

10

11

12                                        Kelly Chang Rickert

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

70