David A. Shaneyfelt (CA Bar No. 240777)*
DShaneyfelt@alvarezfirm.com
The Alvarez Firm
24005 Ventura Blvd.
Calabasas, CA 91302
Telephone: (818) 224-7077
Facsimile: (818) 224-1380

Jonathan A. Scruggs (AZ Bar No. 030505)**
jscruggs@ADFlegal.org
Bryan D. Neihart (AZ Bar No. 035937)**
bneihart@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028

Counsel for Plaintiffs The Babylon Bee, LLC
and Kelly Chang Rickert

* *Local Counsel*
***Pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **The Babylon Bee, LLC,** and **Kelly Chang Rickert**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **Robert A. Bonta**, et al., <br><br> *Defendants.* | Civil No. 2:24-cv-08377-FMO-DTB <br><br> **Memorandum in Support of Plaintiffs' Application for Temporary Restraining Order, or Alternative Motion for Expedited Preliminary Injunction** <br><br> **Date:** Thursday, October 10, 2024 <br> **Time:** 10:00 a.m. <br> **Courtroom:** 6D <br> **Judge:** Fernando M. Olguin |

# TABLE OF CONTENTS

Table of Authorities ....................................................................................ii

Introduction ...............................................................................................1

Statement of Facts .....................................................................................2

Argument ....................................................................................................6

I.    Plaintiffs will likely succeed on the merits. ...................................6

    A.    AB 2839 unconstitutionally regulates speech.............................6

        1.    AB 2839 restricts political speech. .......................................7

        2.    AB 2839 compels speech by requiring disclaimers. ............11

        3.    AB 2839 classifies by content, viewpoint, and speaker. ......13

        4.    AB 2839 fails strict scrutiny and is a historical anomaly... 14

    B.    AB 2839 is vague, facially and as-applied....................................23

II.    Plaintiffs meet the remaining preliminary-injunction factors. ...........28

Conclusion ................................................................................................28

Proof of service ........................................................................................30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*281 Care Committee v. Arneson,*
    766 F.3d 774 (8th Cir. 2014) ........................................................... 20–21

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ............................................................................ 11

*44 Liquormart, Inc. v. Rhode Island,*
    517 U.S. 484 (1996) ............................................................................ 21

*Act Now to Stop War & End Racism Coalition & Muslim American Society*
    *Freedom Foundation v. Dist. of Columbia,*
    846 F.3d 391 (D.C. Cir. 2017) ............................................................ 24

*American Beverage Association v. City & County of San Francisco,*
    916 F.3d 749 (9th Cir. 2019) ......................................................... 14, 28

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ............................................................................ 21

*Boyer v. City of Simi Valley,*
    978 F.3d 618 (9th Cir. 2020) ................................................................ 7

*Brown v. Hartlage,*
    456 U.S. 45 (1982) ............................................................................. 13

*Butcher v. Knudsen,*
    38 F.4th 1163 (9th Cir. 2022) ............................................................ 24

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ........................................................................... 12

*Chaker v. Crogan,*
    428 F.3d 1215 (9th Cir. 2005) ............................................................ 16

*Citizens United v. FEC,*
    558 U.S. 310 (2010) ........................................................................... 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ......................................................... 18, 20

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ................................................................ 7, 12

*Edge v. City of Everett*,
    929 F.3d 657 (9th Cir. 2019) ................................................................ 23–24

*Eu v. San Francisco County Democratic Central Committee*,
    489 U.S. 214 (1989) ................................................................................... 1

*Falwell v. Flynt*,
    805 F.2d 484 (4th Cir. 1986) ...................................................................... 8

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) .................................................................. 12

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ................................................................................. 23

*Federal Election Commission v. Cruz*,
    596 U.S. 289 (2022) ................................................................................. 28

*Fellowship of Christian Athletes v. San Jose Unified School District
    Board of Education*,
    82 F.4th 664 (9th Cir. 2023) ..................................................................... 28

*Flomo v. Firestone Natural Rubber Company, LLC*,
    643 F.3d 1013 (7th Cir. 2011) .................................................................. 25

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992) ................................................................................. 27

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ............................................................................ 23, 27

*Green v. Miss United States of America, LLC*,
    52 F.4th 773 (9th Cir. 2022) ................................................................... 6–7

*Grimmett v. Freman*,
    59 F.4th 689 (4th Cir. 2023) ................................................................ 15–18

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ................................................................................. 11

*Hustler Magazine, Inc. v. Falwell,*
    485 U.S. 46 (1988) ................................................................. 7, 19

*Iancu v. Brunetti,*
    588 U.S. 388 (2019) ...................................................................... 13

*Isaacson v. Mayes,*
    84 F.4th 1089 (9th Cir. 2023) ..................................................... 27

*Mattel, Inc. v. Walking Mountain Products,*
    353 F.3d 792 (9th Cir. 2003) ....................................................... 12

*McCullen v. Coakley,*
    573 U.S. 464 (2014) ...................................................................... 21

*McIntyre v. Ohio Elections Commission,*
    514 U.S. 334 (1995) ........................................................................ 7

*Meghrig v. KFC Western, Inc.,*
    516 U.S. 479 (1996) ........................................................................ 8

*Monitor Patriot Company v. Roy,*
    401 U.S. 265 (1971) ...................................................................... 16

*Moody v. NetChoice, LLC,*
    144 S. Ct. 2383 (2024) .................................................................. 20

*Morse v. Frederick,*
    551 U.S. 393 (2007) ........................................................................ 7

*National Institute of Family & Life Advocates v. Becerra,*
    585 U.S. 755 (2018) ....................................................... 11, 14, 22

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
    597 U.S. 1 (2022) ......................................................................... 22

*Nunez by Nunez v. City of San Diego,*
    114 F.3d 935 (9th Cir. 1997) ....................................................... 24

*Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer,*
    961 F.3d 1062 (9th Cir. 2020) ..................................................... 13

iv

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ......................................................................... 14–16

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ......................................................................... 13–14

*Reno v. ACLU,*
    521 U.S. 844 (1997) ............................................................................. 23

*Rickert v. State, Public Disclosure Commission,*
    168 P.3d 826 (Wash. 2007) ................................................................. 18

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
    487 U.S. 781 (1988) ...................................................................... 11, 13

*Rosenberger v. Rector and Visitors of University of Virginia,*
    515 U.S. 819 (1995) ............................................................................. 13

*Shell Offshore, Inc. v. Greenpeace, Inc.,*
    709 F.3d 1281 (9th Cir. 2013) .............................................................. 6

*Snyder v. Phelps,*
    562 U.S. 443 (2011) ............................................................................. 24

*Stuhlbarg International Sales Company v. John D. Brush & Company,*
    240 F.3d 832 (9th Cir. 2001) ................................................................ 6

*United States v. Alvarez,*
    567 U.S. 709 (2012) .................................................................. 1, 21, 23

*United States v. Hansen,*
    599 U.S. 762 (2023) ............................................................................. 18

*United States v. Stevens,*
    559 U.S. 460 (2010) ............................................................................. 14

*United States v. Williams,*
    553 U.S. 285 (2008) ............................................................................. 18

*Upsolve, Inc. v. James,*
    604 F. Supp. 3d 97 (S.D.N.Y. 2022) ................................................... 22

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015) .................................................................... 16

**Statutes**

Cal. Elec. Code § 20012 ........................ 3–5, 7–9, 11, 14–15, 17–18, 20, 24–26

Cal. Elec. Code § 20512 ........................................................................ 17

Cal. Elec. Code § 20519 .................................................................... 8, 18

47 U.S.C. § 230 .................................................................................... 17

**Regulations**

47 C.F.R. § 73.1217 .............................................................................. 21

**Other Authorities**

Donald J. Trump (@realDonaldTrump), Truth Social
    (Aug. 18, 2024) .............................................................................. 17

Gavin Newsom (@GavinNewsom), X (Sept. 17, 2024) ................................ 21

Gilbert Highet, THE ANATOMY OF SATIRE (1962) ...................................... 12

*ICYMI: Big Oil Misleading Californian (Again), Fact Check Finds*,
    Governor Gavin Newsom (Feb. 2023) ................................................ 21

Il Donaldo Trumpo (@PapiTrumpo), X (Aug. 16, 2024) .............................. 19

*Locations: California*, FactCheck.org (June 18, 2024) ................................ 22

Melissa Goldin, *Fact Focus: A look at false claims made by Trump in
    California*, Associated Press (Sept. 13, 2024) .................................... 22

Restatement (Second) of Torts § 564A (1977) ........................................ 22

*Reuters Fact Check*, Reuters (Sept. 2024) .............................................. 22

Richard L. Hasen, *A Constitutional Right to Lie in Campaigns and
    Elections?*, 74 Mont. L. Rev. 53 (2013) .............................................. 26

*Scorecard*, PolitiFact .......................................................................... 22

Taija PerryCook, *No, Trump Did Not Call Neo-Nazis and White
    Supremacists 'Very Fine People'*, Snopes (June 21, 2024) .................... 19

**INTRODUCTION**

In the name of protecting democracy, California enacted AB 2839, which outlaws anyone from posting or reposting "materially deceptive" political content online, including content that harms candidates' electoral chances. That reaches far beyond "deepfake" content and makes it harder for people to criticize politicians, lampoon candidates, and engage in fulsome political debate. By singling out and censoring political speech, California hasn't saved democracy—it has undermined it. The First Amendment does not brook appeals to "enhancing the ability of … citizenry to make wise decisions by restricting the flow of information to them." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989) (cleaned up).

AB 2839 particularly harms Plaintiffs The Babylon Bee and Kelly Chang Rickert. They each publish and republish satirical material online about politicians, elections, and cultural issues. For Plaintiffs, satire and parody prove points about reality that often cannot be communicated in a serious tone. But their expression—and similar expression by millions of others—is now illegal in California. Worse, AB 2839 allows government officials, aggrieved politicians, and *anyone else who sees the forbidden content* to sue. With today's political polarization, that will chill more speech.

Democracy does not need laws like AB 2839. Existing doctrine already punishes truly defamatory or deceptive content. And "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *United States v. Alvarez*, 567 U.S. 709, 723 (2012). AB 2839 should be enjoined facially and as-applied to The Bee and Rickert.

## STATEMENT OF FACTS

The Babylon Bee regularly publishes satirical articles and videos on its website each week, and it also posts those materials on its social media accounts. Compl. ¶¶ 1, 11. Across its website and social media accounts—including X, Facebook, Instagram, and YouTube—The Bee attracts millions of viewers each month. Compl. ¶¶ 11–12, 43. The Bee creates content about many topics, including politicians, candidates, elections, and California. Compl. ¶¶ 51–52. The Bee often digitally alters pictures or videos to increase the satirical effect. Compl. ¶¶ 55, 58, 61. Sometimes, The Bee's satirical content so closely mirrors reality that people have questioned whether it is true. Compl. ¶¶ 68–69.

Like most other satirists, The Bee creates satire that it knows is "not literally true." Compl. ¶¶ 65–66. But by juxtaposing its satirical content with reality, The Bee hopes to encourage viewers to think more deeply about issues and to take appropriate action to remedy the harms, dangers, or bad ideas The Bee's satire exposes. Compl. ¶ 64. The Bee has been subjected to censorship and significant criticism before. Compl. ¶¶ 72–75, 78.

Kelly Chang Rickert lives in California. Compl. ¶ 100. Like many, she shares her views on politics, elections, politicians, candidates, social issues, and other topics through her various social media accounts. Compl. ¶ 115. Rickert also writes blog posts about these topics on a website she curates and operates. Compl. ¶¶ 104–10. Across her social media accounts and blog, Rickert communicates to tens of thousands of subscribers and followers. Compl. ¶¶ 111, 113–14.

2

Especially during the political season, The Bee and Rickert desire to express their views on politics, elections, and candidates through satire, parody, and other postings. But AB 2839 burdens those communications with threats of significant penalties.

On September 17, 2024, California enacted AB 2839. The law took immediate effect and applies to The Bee and Rickert now. Compl. ¶ 115. It prohibits any "person" or "entity" from knowingly distributing "an advertisement" or "election communication" containing "materially deceptive content" for a period between 120 days before and 60 days after an election. Cal. Elec. Code § 20012(b)(1), (c). "Election communication" includes "any general or public communication" that is "distributed through the internet" or via "text" and that "concerns" "[a] candidate for office or ballot measure," "[v]oting or refraining from voting in an election," or "[t]he canvass of the vote." *Id.* § 20012(f)(5). And "materially deceptive content" means "audio or visual media that is digitally created or modified ... such that it would falsely appear to a reasonable person to be an authentic record of the content depicted." *Id.* § 20012(f)(8)(A)–(B).

AB 2839 only bans "materially deceptive content" related to certain subjects: (**1**) content portraying a "candidate" or "elected official" saying or doing something he or she did not say or do "if the content is reasonably likely to harm the reputation or electoral prospects of a candidate," *id.* § 20012(b)(1)(A), (C); (**2**) content portraying an "elections official" or "elected official" saying or doing something he or she did not say or do if the content is "reasonably likely" to "falsely undermine confidence in the outcome of one

3

or more election contests," *id.* § 20012(b)(1)(B)–(C); and (**3**) content portraying a ballot, voting site, or other election-related property or equipment "if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests," *id.* § 20012(b)(1)(D).

AB 2839 requires "satire or parody" about these subjects to be labeled with this disclosure: "This [image, audio, or video] has been manipulated for purposes of satire or parody." *Id.* § 20012(b)(3). The label must be "no smaller than the largest font size of other text appearing in the visual media." *Id.* § 20012(b)(2)(B). For context, the images below apply the required label to content The Bee has posted and still footage of a video Rickert wants to post. Compl. ¶¶ 264–65.





If The Bee or Rickert post prohibited content without this label, *anyone who views it* could subject them to court proceedings, "injunctive or other equitable relief," "attorneys' fees and costs," and "general or special damages." Cal. Elec. Code § 20012(d)(1)–(2). Though AB 2839 broadly applies to Plaintiffs and burdens their speech with the threat of these penalties, it also contains inexplicable exemptions that undermine California's asserted purposes. *E.g.*, *id.* § 20012(e).

Despite the substantial risk of harm, The Bee is continuing to publish content that appears to qualify as "materially deceptive" under AB 2839. Compl. ¶ 266. And because projecting a punchline ruins satire and parody, The Bee will not include the required satire or parody label. *Id.* So The Bee is arguably violating AB 2839. For her part, Rickert is refraining from posting content that violates or may violate AB 2839 because she desires to avoid the law's crippling penalties. Compl. ¶ 267.

California foresaw the burdens its law imposes on speech and passed it anyway. The legislature recognized that AB 2839 regulates "political speech," "implicate[s] the protections of the First Amendment," is subject to strict scrutiny, and would "certainly be the target of immediate litigation." Compl. ¶¶ 161–70. During the legislative process, Governor Newsom tweeted that it should be "illegal" to post a video parodying a Democratic presidential candidate. Compl. ¶ 151. After this, the legislature removed AB 2839's "satire or parody" exemption. Compl. ¶ 168. And, even now, California is defending its authority under AB 2839 to regulate core political speech— including parody and satire.

By design, AB 2839 chills, restricts, and burdens political speech. With just weeks left before a national election, The Bee and Rickert request an expedited preliminary injunction to protect their freedom to engage in critical political discussions and contribute their views to the marketplace of ideas without AB 2839's threat of government punishment and censorship.

## ARGUMENT

AB 2839 regulates speech based on content and viewpoint in violation of the First Amendment. And its vague provisions empower California to silence views with which it disagrees. For these reasons, Plaintiffs will likely succeed on their First and Fourteenth Amendment claims, and they meet the other preliminary-injunction factors. At the very least, Plaintiffs demonstrate "serious questions going to the merits" and "hardships" that tip "sharply" in their favor. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation omitted). *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting analysis for a temporary restraining order is "substantially similar").

## I.    Plaintiffs will likely succeed on the merits.

AB 2839 unconstitutionally regulates speech and is impermissibly vague. Plaintiffs are likely to succeed in their challenges against it.

### A.    AB 2839 unconstitutionally regulates speech.

AB 2839 both compels and restricts speech based on its content and viewpoint. It also discriminates against particular speakers. AB 2839 therefore must satisfy strict scrutiny. *Green v. Miss U.S. of Am., LLC*, 52

F.4th 773, 791 (9th Cir. 2022); *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th Cir. 2020). It cannot meet that standard and should be enjoined.

### 1.    AB 2839 restricts political speech.

"Political speech … is at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (cleaned up). "The First Amendment affords the broadest protection" to speech about political candidates, ballot measures, and controversial political topics "to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (cleaned up).

These protections include parody, satire, and political cartoons that have long "played a prominent role in public and political debate." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 54 (1988). "Parody is regarded as a form of social and literary criticism, having a socially significant value as free speech under the First Amendment." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997).

But AB 2839 explicitly restricts protected political speech. The law prohibits *any* "materially deceptive" public communications containing an image, video, or recording that portrays a candidate or elected official doing or saying things he or she didn't do or say and that is likely to harm a candidate's reputation or electoral prospects. Cal. Elec. Code § 20012(b)(1)(A), (C).

This prohibition covers parody and satire. By their nature, parody and

satire often portray political candidates doing or saying things that they didn't actually do or say. And AB 2839 isn't limited to content that *actually* fools people. Instead, it covers *any* image, video, or recording that is merely realistic in *some* aspect. The text exempts parody and satire only "if the communication includes a disclosure." Cal. Elec. Code § 20012(b)(3). That disclosure must satisfy onerous requirements, including specific words, font sizes, and duration limits. That further compounds the statute's constitutional infirmities by compelling speech. *Infra* § I.A.2.

Rather than limiting the law to real harms, like media that *actually* deceives or *actually* affects how a citizen might vote, the law prohibits any media that is "likely to harm a candidate's … electoral prospects." But that's exactly the point of parody. They're part of our "thoroughly democratic" tradition of "hav[ing] the high-and-mighty lampooned and spoofed." *Falwell v. Flynt*, 805 F.2d 484, 487 (4th Cir. 1986) (Wilkinson, J., dissenting from denial of rehearing). California seemed to recognize this in AB 2655 (the other statute challenged in this case, though not in this motion), which contains an explicit carveout for "[m]aterially deceptive content that constitutes satire or parody." Cal. Elec. Code § 20519(c). Yet with AB 2839, the legislature recognized the burdens on free speech and nonetheless removed an explicit carveout for satire and parody. Compl. ¶¶ 161–70. That shows California's intentional choice to cover satire and parody. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) (noting intentional legislative action when Congress used language in one statute but omitted that language in another statute).

Consider the fictitious Kamala Harris campaign ad created by a social media user called "Mr. Reagan." It used generative-AI to portray Harris saying things she did not say to criticize her candidacy and policy positions. Compl. ¶¶ 147–49. And although the video was labeled "PARODY," that's not enough; California requires a specifically worded disclosure, written in a font at least as large as the largest font otherwise in the video, appearing throughout the video's duration. Cal. Elec. Code § 20012(b)(1)(A). Because the video did not attach the *correct* disclaimer, it violates the law. California agrees that this is emblematic of prohibited speech; twice Governor Newsom said that Mr. Reagan's satire was prohibited. Compl. ¶ 151.

The law likewise targets satirical content that Plaintiffs have posted and want to continue posting. For example, The Bee recently created a similarly fictitious campaign ad of Governor Newsom endorsing Kamala Harris. Compl. ¶ 47. It used generative-AI to make Newsom's voice appear "authentic." Cal. Elec. Code § 20012(f)(8)(A). And it mocks the Democratic Party's position on issues like immigration—in a way that is "reasonably likely to harm the … electoral prospects of" Harris. Because The Bee posted this video without a disclaimer, it appears to violate the law.

Additionally, The Bee created the two digitally altered images below. *See* Compl. ¶ 54.





Because both use modified images and are "reasonably likely to harm

the … electoral prospects of" Harris, they, too, violate AB 2839.

AB 2839 similarly applies to several political comments Rickert wants

to post. She did not share Mr. Reagan's Harris parody video or a digitally

modified video showing Harris asking immigrants to vote, even though she

otherwise would have. Compl. ¶¶ 121–27. Nor did she share the following

fictitious images of Donald Trump with the caption: "This is the strategy to

get Kamala Harris elected—political retaliation" or something materially

similar. Compl. ¶¶ 131–33.





### 2.    AB 2839 compels speech by requiring disclaimers.

Not only does AB 2839 restrict speech—it also compels it. The state compels speech when it requires someone to say something that affects the speaker's message. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995). A speaker's right to tailor its speech applies "equally to statements of fact the speaker would rather avoid." *Hurley*, 515 U.S. at 573.

These principles apply to forced disclaimers. Requiring pregnancy clinics to post "government-scripted" notices about the services they provide compels speech. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 777 (2018) ("*NIFLA*"). So does forcing professional fundraisers to disclose what percentage of donations go to charitable causes. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797–98 (1988) ("[W]e would not immunize a law … requiring a speaker favoring an incumbent candidate to state during every solicitation that candidate's recent travel budget.").

California's forced disclaimers also unconstitutionally compel speech. Every satirical or parodic meme that is "materially deceptive" about political candidates or elected officials must include a disclaimer—meeting onerous font, duration, and repetition requirements—saying the image "has been manipulated for purposes of satire or parody." Cal. Elec. Code § 20012(b)(3). Covered satire or parody that wants to escape the prohibition must parrot the government's own words.

11

AB 2839 thus forces Plaintiffs to say things they otherwise don't want to say. Take The Bee's fake campaign ad of Governor Newsom endorsing Kamala Harris. It depicts alternating images of smiling citizens and trash-littered streets, overlaid with Newsom's voice boasting about California's homelessness and drug epidemics. *See* Compl. ¶ 47. To avoid liability under AB 2839, The Bee would have to include California's disclaimer, which would ruin the "perception of incongruity" that gives the video its comedic effect. Gilbert Highet, THE ANATOMY OF SATIRE 72 (1962) ("[S]ome of the best material parodies are those which might, by the unwary, be accepted as genuine work."). "Parody needs to mimic an original to make its point." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580–81 (1994*).* And it's "the pretense of reality" juxtaposed with the patently absurd that allows parody to "convey an underlying critical message" in a humorous way. *Farah v. Esquire Mag.*, 736 F.3d 528, 537 (D.C. Cir. 2013) (citation omitted).

Parody doesn't need a disclaimer to receive First Amendment protection. It has the same "socially significant value as" other protected speech. *Dr. Seuss*, 109 F.3d at 1400. And courts regularly distinguish between protected parody and unprotected libel, defamation, and copyright infringement—*without* requiring a disclaimer. *E.g.*, *Farah*, 736 F.3d at 539 (rejecting defamation claim against parody); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 811 (9th Cir. 2003) (rejecting copyright infringement claim against satire). So AB 2839 is both unnecessary and unconstitutional.

"[T]he predictable result" of forced disclaimers is that many speakers

12

will "refrain" from saying anything at all. *Riley*, 487 U.S. at 800. But "[t]he preferred First Amendment remedy" for disfavored speech is "more speech, not enforced silence." *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (cleaned up).

### 3.    AB 2839 classifies by content, viewpoint, and speaker.

AB 2839 triggers strict scrutiny for at least three different reasons. First, it facially regulates based on content because the "law applies to particular speech because of the topic"—political candidates and elected officials. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). It also compels unwanted content, forcing satirists to include dictated disclaimers, which "necessarily alter[] the content of [their] speech." *Riley*, 487 U.S. at 795.

Second, AB 2839 regulates based on viewpoint, an "egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995). Political content that is "positive about a person" is allowed (if it doesn't harm another candidate), but "derogatory" political content is not. *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (cleaned up). That is the "essence of viewpoint discrimination." *Id.* (citation omitted). Edited memes depicting Donald Trump praying are arguably allowed, while memes of Trump running from police are not. Compl. ¶ 132.

Third, AB 2839 imposes different disclaimer requirements based on speaker identity. *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1071–72 (9th Cir. 2020) (explaining law favored "particular speakers"). The Supreme Court is "deeply skeptical of laws that distinguish among different speakers" because they suggest the government is favoring

13

speakers "whose messages are in accord with its own views." *NIFLA*, 585 U.S. at 777–78 (cleaned up). Under AB 2839, broadcasters like CNN or Fox must explain that a video or image is inaccurate but can do so in their own words. Cal. Elec. Code § 20012(e)(1). But candidates for office and everyday internet trolls must include disclaimers that match the State's word, font, and duration requirements, *id.* § 20012(b)(2)–(3), thus "'drown[ing] out' Plaintiffs' messages," *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757 (9th Cir. 2019) (cleaned up).

### 4. AB 2839 fails strict scrutiny and is a historical anomaly.

Because AB 2839 targets speech based on content, viewpoint, and speaker, it is "presumptively unconstitutional." *Reed*, 576 U.S. at 163. That presumption is heightened here, where California explicitly regulates core political speech. *See Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (suggesting "political speech simply cannot be banned or restricted as a categorical matter"). At minimum, AB 2839 must either satisfy rigorous means-end scrutiny, *Reed*, 576 U.S. at 173, or fit within "well-defined and narrowly limited classes" that have not received protection historically, *United States v. Stevens*, 559 U.S. 460, 468–69 (2010). It can do neither.

### a. California need not regulate speech based on content or viewpoint to achieve its interests.

California asserts it has a "compelling interest in protecting free and fair elections." Cal. Elec. Code § 20012(a)(4). But that interest does not justify "selective limitations upon speech." *R.A.V. v. City of St. Paul*, 505

U.S. 377, 392 (1992).

*R.A.V.* proves the point. The Court there invalidated a law against certain race-based hate crimes. *Id.* at 380. The state's interest in protecting "basic human rights" was undoubtedly compelling. *Id.* at 395. But the law's content-based distinctions were not necessary to prohibit "reprehensible" acts like cross burnings. *Id.* at 395–96. Instead, "the only interest distinctively served by the content limitation" was displaying the city's "special hostility towards the particular biases thus singled out." *Id.* at 396.

Other courts have applied *R.A.V.* to invalidate content-based election laws like California's. For example, in *Grimmett v. Freman*, the Fourth Circuit held unconstitutional a North Carolina law that prohibited false "derogatory reports" about political candidates that were "calculated or intended to affect the chances of such candidate for nomination or election." 59 F.4th 689, 691 (4th Cir. 2023). That law only covered false statements about certain political subjects, "of a particular nature[,] or made with a particular intent." *Id.* at 694. That ran "headlong into *R.A.V.*" *Id.*

California repeats the same mistake. Start with its prohibition on false content "likely to harm the … electoral prospects of a candidate." Cal Elec. Code § 20012(b). That does not prohibit *all* false content—only false content that includes "statements about a certain subject"—candidates for office. *Grimmett*, 59 F.4th at 694. And AB 2839 applies only to statements "of a particular nature"—content likely to harm a candidate's election prospects. *Id.* So "speakers may lie with impunity about businesspeople, celebrities, purely private citizens, or even government officials" who are not candidates

for office. *Id.*

The prohibition on false content that harms a candidate's reputation is similarly flawed. "[D]amage to reputation is, of course, the essence of libel." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275 (1971). But AB 2839 prohibits libel only against political candidates. While "the government may proscribe libel," "it may not make the further content discrimination of proscribing *only* libel critical of" political figures. *R.A.V.*, 505 U.S. at 384; *Grimmett*, 59 F.4th at 694; *Chaker v. Crogan*, 428 F.3d 1215, 1226–27 (9th Cir. 2005).

"As in *R.A.V.*," AB 2839's "limitation to speech addressing only certain topics renders it facially unconstitutional." *Grimmett*, 59 F.4th at 696. "The dispositive question ... is whether content discrimination is reasonably necessary to achieve" California's interest in preserving free and fair elections. *Id.* (citation omitted). "Here, it plainly is not because [a law] not limited to speech about current political candidates would have precisely the same beneficial effect." *Id.* (cleaned up).

### b.    AB 2839 is underinclusive.

"Underinclusiveness can … reveal that a law does not actually advance a compelling interest." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015). Here, AB 2839's content discrimination proves that it is fatally underinclusive, raising "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 448 (cleaned up).

Again, start with AB 2839's narrow focus on deceptive content

16

portraying only political candidates, elected officials, election officials, or voting mechanisms. Countless election-related deepfakes like ones portraying "Swifties for Trump" are allowed so long as they do not depict a candidate, official, or voting mechanism. Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2024), https://bit.ly/4drwhZA. So are many other false claims that "undermine the perception of electoral integrity"—such as allegations about Russian disinformation—so long as they do not specifically reference a candidate, ballot measure, or voting. *Grimmett*, 59 F.4th at 696 n.9. If the State's goal is to protect election integrity, prohibiting satirical memes while failing to regulate deepfakes that *actually* fool people makes little sense. *Id.*

Also consider AB 2839's broad exemption for "interactive computer service[s]," which "does not impose liability" on them. Cal. Elec. Code § 20012(e)(4) (citing 47 U.S.C. § 230(f)(2)). Though the companion bill, AB 2655, regulates "large online platform[s]" with at least 1 million California users, Cal. Elec. Code § 20512(h), all interactive computer services with less than 1 million California users escape any regulation under these two bills. This leaves a massive (and inexplicable) gap in California's efforts to address the alleged ills that it seeks to remedy through censorship.

Add to this that AB 2839 imposes different requirements on different speakers. Candidates can post fake content positively portraying themselves by attaching a short disclaimer. *See* Cal. Elec. Code § 20012(b)(2). Broadcasters can share prohibited content with a disclaimer in their own words rather than California's. *Id.* § 20012(e)(1). And "broadcast stations" and

17

"internet websites" that distribute but do not create prohibited content are exempt from "general or special damages." *Id.* § 20012(d)(2)(B). But Plaintiffs can create similar content only if it is parody or satire and includes the prescribed disclaimer. If California's goal is to safeguard its elections, that makes little sense. Politicians and large media giants promoting "self-aggrandizing falsehoods" are just as likely to undermine elections as citizens posting similar content. *Grimmett*, 59 F.4th at 696 n.9; *accord Rickert v. State, Pub. Disclosure Comm'n*, 168 P.3d 826, 831–32 (Wash. 2007).

### c.    AB 2839 is both overinclusive and overbroad.

To pass means-end scrutiny, a speech regulation must not "burden substantially more speech than is necessary." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948 (9th Cir. 2011) (en banc) (citation omitted). Yet AB 2839 sweeps in too much protected speech. Instead of regulating deepfakes that fool people, the law regulates "a substantial quantity" of protected speech "that does not create the same evils." *Id.* at 947 (citation omitted). California could easily carve out comedic social criticism just like AB 2655 does. Cal. Elec. Code. § 20519(c).

This overinclusiveness also violates the overbreadth doctrine. "[A] statute is facially invalid if it prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). Overbreadth turns on whether the law's "applications to protected speech … swamp its lawful applications." *United States v. Hansen*, 599 U.S. 762, 774 (2023).

18

AB 2839's applications do. The most obvious examples are satire and parody—content protected under the First Amendment. *See Hustler Mag.*, 485 U.S. at 54–56. The law covers Mr. Reagan's satirical video about Kamala Harris, even though it's labeled "PARODY," and The Bee's satirical video of Governor Newsom mockingly endorsing Harris. It even sweeps in a satirical article titled "Hillary Clinton Meets With Kamala To Help Her Improve Her Black Accent" because of the digitally modified image of Harris and Clinton. Compl. ¶ 57.

Aside from satire and parody, AB 2839 prohibits vast amounts of other protected speech. It seemingly bans a Kamala Harris image that attributes nonsense statements to her like: "Stock Market might not be up, but up isn't down, and down is not up, so what goes down is not up." Compl. Ex. 4 at 27. It also forbids misleadingly edited videos, like a montage of Harris's statements about rising grocery prices. il Donaldo Trumpo (@PapiTrumpo), X (Aug. 16, 2024), https://perma.cc/GJS9-KA7X. Adding the text "WE DID THAT JOE" is also off limits because it appears like Harris *admitted* that the Biden-Harris Administration caused rampant inflation. Or take the false claim that Donald Trump called Neo-Nazis "very fine people." Taija PerryCook, *No, Trump Did Not Call Neo-Nazis and White Supremacists 'Very Fine People'*, Snopes (June 21, 2024), https://perma.cc/PFB4-F4CT. Anyone sharing a selectively edited clip claiming that Trump supports Neo-Nazis violates AB 2839.

The broad definition of "election communication" extends AB 2839's reach in staggering ways. It covers "any general or public communication"

19

sent through "text" or the "internet" that addresses a "candidate," "ballot measure," or "voting." Cal. Elec. Code. § 20012(f)(5). That includes general posts on private social media accounts and text messages to groups. This, too, demonstrates AB 2839's vast overinclusiveness. *Comite*, 657 F.3d at 949.

What's more, AB 2839's liberal enforcement provisions are a recipe for chilling untold amounts of speech, including speech that does not clearly fall within the statute. *Infra* § I.C (explaining vagueness). It isn't just defamed candidates or elected officials who can sue—any "recipient of materially deceptive content" can "seek injunctive or other equitable relief." Cal. Elec. Code § 20012(d)(1). That includes any "person who views, hears, or otherwise perceives" the content. *Id.* § 20012(f)(9). This drastically increases the chances that satirical articles will lead to a lawsuit, regardless of whether they fall under AB 2839's scope. But as soon as such a suit is filed, "[a]t that point … damage is done." *281 Care Comm. v. Arneson*, 766 F.3d 774, 792 (8th Cir. 2014). Thus, AB 2839 is "overbroad because … there is nothing to prohibit the filing of a complaint against speech that may later be found wholly protected." *Id.*

Given its breadth, AB 2839's "unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024).

### d.    California ignored less restrictive alternatives.

California had many alternative ways to protect its elections. AB 2839 is not "the least restrictive means among available, effective alternatives."

20

*Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Nor can California prove it considered alternatives or found them ineffective. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

To start, California could limit AB 2839's reach to conduct that *actually* misleads voting citizens, whether inducing them to stay home on election day or duping them into voting for the "wrong" candidate. *E.g.*, 47 C.F.R. § 73.1217 (prohibiting false broadcasts that foreseeably "cause substantial public harm" and do "in fact directly cause" harm).

Or California could create a "Government-created database" that tracks deepfakes and "verif[ies] and expos[es] false claims." *Alvarez*, 567 U.S. at 729. Similarly, California could seek to counter deceptive speech with speech of its own, like an educational campaign on how to spot deceptive deepfakes. *E.g.*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996) (citing "educational campaigns" as alternative to First Amendment restriction). "[T]he ordinary course in a free society" is to remedy false speech with "speech that is true." *Alvarez*, 567 U.S. at 727. "Especially as to political speech, counterspeech is the tried and true buffer and elixir." *281 Care Comm.*, 766 F.3d at 793. Governor Newsom already fact-checks statements on his social media account and on his website.[1] Plenty of media

_____

[1] Gavin Newsom (@GavinNewsom), X (Sept. 17, 2024), https://perma.cc/Q2DN-6JCG; *ICYMI: Big Oil Misleading Californian (Again), Fact Check Finds*, Governor Gavin Newsom (Feb. 2023), https://perma.cc/LLW6-FXLH.

outlets do this, too.[2] In fact, The Bee has been subject to much fact-checking in the past, like a *USA Today* article saying that "[a] satirical article about the 9th Circuit 'overturning' Supreme Court Justice Ruth Bader Ginsburg's death has no basis in fact." Compl. ¶¶ 83–86 & n.7. If media outlets have time to fact-check articles like these, there's little reason to doubt that California can publicly debunk false claims that pose a real threat.

Alternatively, California could limit potential plaintiffs to political candidates actually harmed by unprotected false speech. This would mirror defamation law, which permits claims only by the person harmed—not anyone who hears the defamation. *See* Restatement (Second) of Torts § 564A (1977). That alternative would decrease the risk of frivolous lawsuits and reduce the potential to chill speech.

### e.    AB 2839 is a historical anomaly.

AB 2839 is a historical anomaly that finds no footing "in a tradition of regulation going back to the Founding." *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 116 (S.D.N.Y. 2022); *accord NIFLA*, 585 U.S. at 767; *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24–25 (2022). The list of unprotected speech has been "tightly limited" to "defamation, incitement, fraud, and obscenity." *Upsolve*, 604 F. Supp. 3d at 116. AB 2839 goes far beyond that list.

---

[2] *Reuters Fact Check*, Reuters (Sept. 2024), https://bit.ly/3TT2Ad4; *Scorecard*, PolitiFact, https://perma.cc/3QN9-DZQ2; *Locations: California*, FactCheck.org (June 18, 2024), https://perma.cc/9X6L-9DNA; Melissa Goldin, *Fact Focus: A look at false claims made by Trump in California*, Associated Press (Sept. 13, 2024), https://bit.ly/4eKNSg5.

The law covers much speech that is not defamatory, including parody that undermines a candidate's election chances. Nor is it limited to speech that intends to or accomplishes fraud. Instead, California's law prohibits speech that could be *perceived* to communicate a lie, even if the speaker's intent is to criticize rather than deceive and even when a speaker gains no economic benefit. Because even intentional lies are protected speech, *see Alvarez*, 567 U.S. at 717–18, California's law falls far outside of the First Amendment's historical bounds.

**B.    AB 2839 is vague, facially and as-applied.**

Due process prevents the government from enacting a law so vague that "its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). To satisfy due process, a law must provide notice of what is prohibited and be sufficiently precise so "those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

Vague laws "raise[ ] special First Amendment concerns" because they empower the government to silence viewpoints with which it disagrees. *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). When "[d]efinitions of proscribed conduct … rest wholly or principally on the subjective viewpoint of a law enforcement officer," such laws "run the risk of unconstitutional murkiness." *Edge v. City of Everett*, 929 F.3d 657, 666 (9th Cir. 2019). "These concerns are magnified even further when a law regulates political speech, which 'occupies the highest rung of the hierarchy of First Amendment values.'"

23

*Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022) (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)). So "where First Amendment freedoms are at stake, a[ ] … great[ ] degree of specificity and clarity of laws is required." *Edge*, 929 F.3d at 664 (cleaned up).

Multiple ambiguities in AB 2839 offend these principles and make AB 2839 both facially vague and overbroad for the same reasons. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) ("In a facial vagueness challenge, the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct.") (cleaned up). While AB 2839 appears to cover many of Plaintiffs' actual and desired posts, its vague text also invites unbridled enforcement discretion. That gives Plaintiffs little notice about what posts actually cross the line. Plaintiffs thus raise both as-applied and facial vagueness and overbreadth arguments. *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. Dist. of Columbia*, 846 F.3d 391, 410 (D.C. Cir. 2017) (allowing as-applied First Amendment and facial vagueness arguments when law provided "standardless enforcement discretion").

AB 2839's problems start with malleable terms like "materially deceptive." Cal. Elec. Code § 20012(f)(8)(A). The law says this means intentionally created content that makes the subject "falsely appear to a reasonable person to be an authentic record of the content depicted." *Id.* But how is a satirist, blogger, or social media user supposed to know what political satire or parody will appear authentic? Considering that some of The Bee's posts are fact-checked but many of them are not, Compl. ¶¶ 78–86,

it's impossible to know what a reasonable person would think about whether the content appears authentic. Snopes, for instance, thought it necessary to "fact-check" this satirical post The Bee wrote about United States Representative Alexandria Ocasio-Cortez. Compl. ¶¶ 83, 237.



If Ocasio-Cortez were a California candidate, an enforcement official would seemingly have discretion to determine that this post violates AB 2839.

Also consider statutory phrases like "reasonably likely to harm the reputation or electoral prospects of a candidate." Cal. Elec. Code § 20012(b)(1)(A), (C). Terms like "likely to harm" are vague. Fictitious memes of Trump rescuing kittens and pets could be "likely to harm" Harris's prospects because they make Trump seem more sympathetic. *Cf. Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013, 1022 (7th Cir. 2011) (observing that a law prohibiting practices "likely to harm" was "pretty vague, in part because no threshold of actionable harm is specified"). So could the following digitally altered image because it falsely conveys that a popular celebrity endorses Trump. Compl. ¶ 247.



Again, bloggers and social media users are left to guess what California enforcement officials will think.

Equally problematic is the statutory language singling out content that is "reasonably likely to falsely undermine confidence in the outcome" of an election. Cal. Elec. Code § 20012(b)(1)(C). Consider one video posted by the Republican National Committee that contains "12 Minutes of Democrats Denying Election Results," featuring elected officials denying the legitimacy of Donald Trump's presidency because of Russian disinformation. Compl. ¶ 245. That might "falsely undermine confidence" in the outcome of an election. The answer, once again, depends on whether the enforcement official perceives the video as sufficiently "deceptive."

At bottom, what's deceptive or "'misleading' is unconstitutionally vague and in the eyes of the beholder." Richard L. Hasen, *A Constitutional Right to Lie in Campaigns and Elections?*, 74 Mont. L. Rev. 53, 71–72 (2013) (targeting "'deceptive' or 'misleading' election speech … could chill legitimate speech given the elasticity of the terms"). AB 2839 cannot build a speech-

targeting enforcement scheme on such an amorphous premise. Its vague prohibitions "contain[] more than the possibility of censorship through uncontrolled discretion." *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 1 33 (1992). "Uncertain meanings inevitably lead citizens to 'steer far wide of the unlawful zone' … than if the boundaries of the forbidden areas are clearly marked." *Grayned*, 408 U.S. at 109 (citation omitted).

That chilling of speech has been established here. Rickert wants to post certain political speech, including parody and satire, but fears that doing so will violate the law. Compl. ¶¶ 119–28; *Isaacson v. Mayes*, 84 F.4th 1089, 1097 (9th Cir. 2023) (explaining that if a regulation's prohibitions are "vague, then cautious over-compliance is a logical result fairly traceable to the statute"). For instance, Rickert has refrained from sharing the following AI-generated images depicting Harris dressed in a Politburo outfit or standing at the Democratic National Convention with the Soviet Union flag on prominent display. Compl. ¶¶ 119–28.

 

27

These images, while not "factually true," send messages that Rickert wants to convey about Harris's policy plans. But those are messages that AB 2839's vagueness would allow government officials to censor.

## II.    Plaintiffs meet the remaining factors for a temporary restraining order or preliminary injunction.

Plaintiffs satisfy the remaining factors for immediate injunctive relief. "It is axiomatic that [t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc) (cleaned up). Such a loss of First Amendment rights is undoubtedly occurring because Rickert is reasonably chilling her speech now. Alternatively, First Amendment rights are so precious that merely demonstrating a "colorable First Amendment claim" is sufficient to show a likelihood of irreparable injury. *Am. Beverage*, 916 F.3d at 758. Plaintiffs have easily satisfied that lesser showing.

Moreover, raising "serious First Amendment questions compels a finding that … the balance of hardships tips sharply in Plaintiffs' favor." *Id.* (cleaned up). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted). And given "our profound national commitment to … uninhibited, robust, and wide-open" political debates, the public interest lies in protecting political speech. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 302 (2022) (citation omitted).

## CONCLUSION

The Court should grant Plaintiffs' requested injunction.

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,438 words, which complies with the word limit of L.R. 11-6.1.

DATED:    October 1, 2024

/s/ David A. Shaneyfelt
David A. Shaneyfelt
*Counsel for Plaintiffs*

29

# PROOF OF SERVICE

I, David A. Shaneyfelt, am over the age of 18 years and not a party to the within action. My business address is 24005 Ventura Blvd., Calabasas, CA 91302.

On October 1, 2024, I electronically filed Memorandum in Support of Plaintiffs' Application for Temporary Restraining Order, or Alternative Motion for Expedited Preliminary Injunction with the Clerk of Court using the CM/ECF system. Pursuant to L.R. 5-3.2.1, the CM/ECF system automatically generates a "Notice of Electronic Filing" ("NEF") at the time a document is filed with the system; service with this electronic NEF constitutes service pursuant to the Federal Rules of Civil Procedure, and the NEF itself constitutes proof of service for individuals so served.

In addition, pursuant to L.R. 5-3.2.1, I will serve via process server the foregoing document as well as the Verified Complaint and attached exhibits by process server addressed to the following persons not registered for the CM/ECF system and notify the Court once these persons have been served:

| Rob Bonta, in his official capacity as Attorney General of the State of California State of California Dept. of Justice 1300 "I" Street, Sacramento, CA 95814-2919 | Shirley N. Weber, in her official capacity as California Secretary of State 1500 11th Street Sacramento, CA 95814 |
|---|---|

In addition, my co-counsel will email the foregoing documents to counsel for Defendants Bonta and Weber as laid out in his declaration filed in support of this motion.

30

1    I declare under penalty of perjury that the foregoing is true and

2  correct.

3                                        /s/ David A. Shaneyfelt

4                                        David A. Shaneyfelt
                                         *Counsel for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28